MICHAEL MCCORMACK, APPELLANT, V. CITIBANK, N.A., A
CORPORATION, ET AL., APPELLEES.
489 N.W.2d 293

Filed September 4, 1992.    No. S-91-532.

Eugene L. Hillman for appellant.

Keith I. Frederick and Thomas W. McPherson, of Schmid, Mooney & Frederick, P.C., for appellee Citibank.

Gary L. Dolan, of Knudsen, Berkheimer, Richardson & Endacott, for appellee National Bank of Commerce.

Thomas F. Flaherty, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellee First Westroads Bank.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

The U.S. Court of Appeals for the Eighth Circuit, pursuant to Neb. Rev. Stat. §§ 24-219 to 24-225 (Reissue 1989), has certified the following question of state law to this court:

> Whether Neb. Rev. Stat. § 21-20,137 permits a corporation that has been revived more than two years after it has been dissolved by the Secretary of State to maintain an action based on a claim that arose before the dissolution, despite Neb. Rev. Stat. § 21-20,104's two-year limit on survival of remedy for claims of a dissolved corporation.

The "Certification Request" states that the statement of all facts relevant to the question certified is set forth in the opinion of the U.S. District Court for the District of Nebraska. The "Facts" in that opinion are the following (omitting references to "Filings" in the U.S. District Court's "Memorandum Opinion"):

> In 1983, Acoustical Engineering, Inc., a Nebraska corporation, entered in a contract with a Saudi Arabian company named Obaid & Almullah Construction

Company ("Obaid") to furnish materials and labor for construction of an airport terminal at the Riyadh International Airport at Riyadh, Saudi Arabia. The contract required Acoustical Engineering to furnish a Documentary Letter of Credit to Obaid to cover possible nonperformance by Acoustical Engineering. Acoustical Engineering arranged with defendant, First Westroads Bank, to provide the required Documentary Letter of Credit. First Westroads Bank then arranged with NBC [National Bank of Commerce] to provide it with a Documentary Letter of Credit. NBC in turn arranged with Citibank for Citibank to provide it with a Documentary Letter of Credit, and Citibank arranged with Samba [Saudi American Bank] for Samba to provide it with the Documentary Letter of Credit. This guarantee was to be conditioned upon Obaid['s] issuing to Acoustical Engineering a "Certificate of Completion of the Works" before any of the documentary letters of credit in the chain could be drawn upon . . . .

First Westroads Bank required that it be furnished with certain guarantees and pledges against the liability assumed by it in connection with the Documentary Letter of Credit to Acoustical Engineering. . . . A letter of credit agreement and a letter of indemnity and reimbursement, both dated March 14, 1983, were signed by Gerald E. Carlson, President, on behalf of Acoustical Engineering, Inc. . . . In addition, Gerald E. Carlson and Darlene M. Carlson executed their personal guaranty March 14, 1983, regarding the obligations of Acoustical Engineering to First Westroads Bank in connection with the Letter of Credit transaction . . . . Plaintiff also pledged securities to the First Westroads Bank to secure the obligations of Acoustical Engineering in connection with the Documentary Letter of Credit . . . .

On approximately September 9, 1985, SAMBA honored a draw by Obaid on the documentary letter of credit. Samba then drew on Citibank [which] honored the request; Citibank drew on NBC, [which] honored the request; and NBC drew on First Westroads Bank [which]

honored the request . . . . Gerald E. Carlson and Darlene M. Carlson subsequently filed bankruptcy. Acoustical Engineering was dissolved for nonpayment of taxes on April 16, 1987 . . . .

First Westroads Bank sold securities pledged by the plaintiff to it as security for the documentary letter of credit. Plaintiff filed his complaint alleging he is a subrogee of Acoustical Engineering and Gerald E. Carlson and Darlene M. Carlson, and asserting damage by the loss of his pledged securities. Plaintiff alleges that, "despite the fact that Acoustical Engineering, Inc., had advised each of the Defendant banks that the Documentary Letter of Credit had not been complied with and that their 'Certificate of Completion of the Works' had never been issued," each of the defendant Banks honored the respective draws upon it . . . .

Our answer to the certified question is based on the facts set out above and on the two statutes involved. Those statutes provide as follows:

Neb. Rev. Stat. § 21-20,104 (Reissue 1991) provides in pertinent part:

The dissolution of a corporation . . . (1) by the issuance of a certificate of dissolution by the Secretary of State . . . shall not take away or impair any remedy available to or against such corporation, its directors, officers, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution *if action or other proceeding thereon is commenced within two years after the date of such dissolution.* Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name. The shareholders, directors and officers shall have power to take such corporate or other action as shall be appropriate to protect such remedy, right or claim.

(Emphasis supplied.)

Neb. Rev. Stat. § 21-20,137 (Reissue 1991) provides:

Such reinstatement shall validate all contracts, acts, matters and things made, done and performed within the scope of its articles of incorporation by such corporation,

its officers and agents during the time when such corporate existence was inoperative or void or after its expiration by limitation with the same force and effect and to all intents and purposes as if such corporate existence had at all times remained in full force and effect; and all real and personal property, rights and credits, which were of such corporation at the time its corporate existence became inoperative or void, or expired by limitation and which were not disposed of prior to the time of such revival or renewal shall be vested in such corporation, after such revival and renewal, as fully and completely as they were held by such corporation at and before the time its corporate existence became inoperative or void or expired by limitation and such corporation after such renewal and revival shall be as exclusively liable for all contracts, acts, matters and things made, done or performed in its name and on its behalf by its officers and agents prior to such reinstatement, as if its corporate existence had at all times remained in full force and effect.

Neb. Rev. Stat. § 21-20,135 (Reissue 1991) provides that a corporation which has been dissolved for failure to pay taxes or file an annual report may be revived by filing a certificate with the Secretary of State. This revival validates all contracts made or performed while the corporation was dissolved, and provides that all rights of the corporation held by the corporation at the time of its dissolution "and which were not disposed of prior to the time of such revival . . . shall be vested in such corporation . . . as fully and completely as they were held by such corporation at and before the time its corporate existence" was dissolved. § 21-20,137.

Appellees place some reliance on the phrase concerning rights "which were not disposed of prior to the time of such revival" and contend that the dissolved corporation's rights were disposed of by the neglect of the corporation to do anything in the 2-year survival period. Such a construction would render the terms of § 21-20,137 meaningless, since that statute reinstates *all* rights of the dissolved corporation after revival. Our duty is to give meaning and effect to all statutes, if possible. We determine that "disposed of" in § 21-20,137

means property and rights of the dissolved corporation which were transferred to others, shareholders or creditors, in connection with the dissolution. Such a determination comports with the definition of "dispose of" in Webster's Third New International Dictionary, Unabridged 654 (1981)—"to transfer into new hands or to the control of someone else." No rights of the dissolved corporation were transferred to anyone by simply not seeking a disposition within 2 years.

In Nebraska, therefore, § 21-20,104 provides for a 2-year period during which a dissolved corporation may sue based on any rights of the corporation or be sued based on any liabilities of the corporation. There is no requirement that the dissolved corporation seek revival to avail itself of the 2-year period. The statute also provides that any person or entity outside the corporation may use the 2-year period to sue the dissolved corporation. We have held that this statute is a survival statute, providing a 2-year period during which the corporation may sue or be sued. That period of time is available to the corporation to assert rights of the corporation or to persons deserving to assert rights against the dissolved corporation.

Section 21-20,137 provides for rights which may be asserted only by the corporation or its shareholders, in the manner set out in Neb. Rev. Stat. §§ 21-20,140 and 21-20,141 (Reissue 1991). If a corporation or its shareholders elect to proceed under Neb. Rev. Stat. §§ 21-20,135 to 21-20,142 (Reissue 1991), that corporation then exposes itself to the assertion of liabilities against the corporation for periods of time exceeding the 2-year limit set out in § 21-20,104. This voluntary election by a dissolved corporation or its shareholders under § 21-20,137 gives that corporation rights beyond those set out in § 21-20,104 and exposes the revived corporation to liabilities beyond those which the corporation might be subjected to under § 21-20,104.

A different situation is controlled by each of the statutes. Section 21-20,104 applies only to dissolved corporations which have elected not to revive their existence, and § 21-20,137 applies to those corporations which have elected to revive their corporate existence.

The certified question from the court of appeals asks us to

reconcile these two statutes to determine whether the 2-year limit in § 21-20,104 applies in all instances. We have not previously dealt with the two statutes in conjunction. In *Van Pelt v. Greathouse*, 219 Neb. 478, 486, 364 N.W.2d 14, 20 (1985), we held:

> [W]here a statute continues the existence of a corporation for a certain period after its dissolution for purposes of defending and prosecuting suits, no action can be maintained by or against it after the expiration of that period. In other words, while a statute of limitations relates to the remedy only and not to substantive rights . . . a survival statute operates on the right or claim itself.
>
> . . . .
>
> Section 21-20,104 is a survival statute which destroys the capacity of former shareholders of a dissolved corporation to sue or be sued on rights entirely dependent upon and existing solely as an outgrowth of the shareholder status except within 2 years after the corporation has been dissolved.

Recently in *Licht v. Association Servs., Inc.*, 236 Neb. 616, 623, 463 N.W.2d 566, 571 (1990), we reiterated that

> [s]ection 21-20,104 is a survival statute, not a statute of limitations, and, as such, [it] gives life to claims which would otherwise be extinguished. . . . Absent the survival statute, a dissolved corporation could not sue or be sued. . . . Therefore, the rights created by the statute are the right of the corporation to sue during the survival period and the right of others to sue the corporation during that same period.

In neither *Van Pelt* nor *Licht* was there any effort to revive the dissolved corporation, so neither case addressed the question presented in this case. In the case presented to us with this certified question, the corporation was dissolved on April 16, 1987. McCormack's complaint was not filed until September 5, 1989, and the corporation at its request was revived on October 31, 1989. Therefore, while McCormack's complaint was not filed within the 2-year period set out in § 21-20,104 (the survival statute), this case now presents a situation not earlier before Nebraska courts in that the

dissolved corporation now has been revived and has all of its rights and credits "as fully and completely as they were held by such corporation" at the time of its dissolution. See § 21-20,137.

Other courts have been asked to interpret similar statutes, with varying results. In *Haitian Ventures v. Wisniewski*, 376 So. 2d 424 (Fla. App. 1979), the corporation was dissolved in 1973 and was revived on February 15, 1979. A motion by the corporation to intervene was pending in trial during that time. The appeals court affirmed the trial court's denial of the motion to intervene, finding that the Florida law concerning automatic reinstatement was limited to the 3-year grace period provided in the survival statute. The reinstatement statute stated that the corporate existence should be deemed continued without interruption, but the court found that "it does not state that the reinstatement of a previously dissolved corporation will also automatically reinstate rights or claims of the corporation that existed at the time of its dissolution." *Haitian Ventures*, 376 So. 2d at 426. The court held that to allow the automatic reinstatement provision to control over the 3-year grace period would make the grace period meaningless. It should be noted, however, that § 21-20,137 does state that "rights and credits, which were of such corporation at the time its corporate existence became inoperative . . . shall be vested in such corporation, after such revival and renewal, as fully and completely as they were held [at] the time its corporate existence became inoperative." Apparently, the Nebraska and Florida statutes are sufficiently different to justify different results.

Another Florida appeals court found *Haitian Ventures* to be factually distinguishable and held that once a corporation is reinstated, it may bring, defend, or intervene in any lawsuit, even if the action is based on facts that arose prior to the reinstatement. *LeLac Property Owners' Ass'n Inc. v. Routh*, 493 So. 2d 1131 (Fla. App. 1986). The court stated that the reinstatement statute, in effect, allows reinstatement at any time of a corporation which has been involuntarily dissolved, and treats that corporation as though it had never been dissolved.

The Kansas Court of Appeals has recently held that

reinstatement validates all actions of a corporation during the time when the articles of incorporation were inoperative. In *Mission Road Assocs, L.P. v. IML Realty Co.*, 15 Kan. App. 2d 388, 807 P.2d 1330 (1991), the corporation's articles were forfeited on October 15, 1987, a lawsuit was filed on September 26, 1989, and the corporation was reinstated on June 29, 1990. The court found that the Kansas statute provided that a corporation is renewed and revived with the same force and effect as if the articles of incorporation were never inoperative or void. It held that reinstatement validates all contracts, acts, matters, and things made, done, and performed during the time when the articles were inoperative. The authority to file an action in district court during the period of time when the articles were forfeited was granted retroactively on the date the articles were reinstated.

The Minnesota Supreme Court held that survival statutes are remedial in nature and are to be liberally construed. In a case in which the corporation was dissolved on December 29, 1975, and an injury occurred on August 3, 1977, the court held that the purpose of the statute would not be affected when a suit based on claims arising either before or after dissolution is brought within the 2-year survival period, "particularly where . . . the acts of the corporation which gave rise to the alleged liability occurred prior to dissolution." *Gassert v. Commercial Mechanisms, Inc.*, 277 N.W.2d 392, 394 (Minn. 1979).

From the facts provided to us in the case at issue here, it appears that the actions complained of took place prior to the dissolution. Based on those facts and the wording of § 21-20,137, the reinstatement of the corporation should also operate to restore to McCormack any rights he held based on the rights held by the dissolved, and then revived, corporation.

The submitted question is answered, "Yes," and the Clerk of the Supreme Court of Nebraska is directed to return the cause to the U.S. Court of Appeals for the Eighth Circuit.

JUDGMENT ENTERED.