979 F.2d 643
 Michael McCORMACK, Appellant,
v.
CITIBANK, N.A., a corporation; National Bank of Commerce
Trust & Savings Association, a corporation; and
First Westroads Bank, a corporation, Appellees.
 No. 90-1898.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 11, 1991.
Decided Nov. 10, 1992.
Rehearing Denied Dec. 14, 1992.
 
 Eugene L. Hillman, Omaha, Neb., argued, for appellant.
 Thomas Flaherty, Omaha, Neb., argued, for Westroads Bank.
 Gary Dolan, Omaha, Neb., argued, for National Bank.
 Mark Scherer, Omaha, Neb., argued, for Citibank.
 Before MAGILL, Circuit Judge, BRIGHT, Senior Circuit Judge, and HUNTER,* Senior District Judge.
 MAGILL, Circuit Judge.
 
 
 1
 Michael McCormack appeals the district court's order granting motions to dismiss. McCormack brought this action in federal district court alleging breach of contract and negligence by the defendant banks in connection with a letter of credit transaction. As this transaction involved international banking, jurisdiction was premised on 28 U.S.C. § 632. The district court granted motions to dismiss on the ground that McCormack's action was barred by statute. The district court also granted motions to dismiss due to lack of privity. Prior to deciding this appeal, this court certified a question to the Nebraska Supreme Court regarding the statutory bar issue. This court now reverses the trial court's granting of motions to dismiss on both the statutory bar ground and the alternative lack of privity ground, and we remand for further proceedings.
 
 I.
 
 2
 This case involves a rather Byzantine set of facts, and it has been litigated in the Nebraska as well as the federal courts. See, e.g., McCormack v. First Westroads Bank, 238 Neb. 881, 473 N.W.2d 102 (1991). The district court opinion, McCormack v. Citibank, No. 89-0-574 (D.Neb. Apr. 30, 1990), outlines the facts relevant to the present dispute. We provide a brief synopsis of the essential elements.
 
 
 3
 A Saudi Arabian construction company, Obaid and Almullah (Obaid), was involved in the construction of an airport in Riyadh, Saudi Arabia. Obaid subcontracted with Acoustical Engineering, Inc. (Acoustical), a Nebraska corporation, in November of 1980. In connection with this contract, Acoustical was to provide Obaid with a documentary letter of credit.
 
 
 4
 In order to obtain the letter of credit, Acoustical contacted its bank, First Westroads. First Westroads was unable to provide a letter of credit directly to Obaid, however. First Westroads, accordingly, contacted National Bank of Commerce Trust and Savings Association (NBC) to obtain the letter of credit. NBC, thereafter, contacted Citibank, N.A. (Citibank) to obtain the letter of credit. Citibank ultimately contacted Saudi American Bank (SAMBA) to obtain the letter of credit.
 
 
 5
 First Westroads required that Acoustical give certain guarantees and pledges as further security. On behalf of Acoustical, its president, Gerald E. Carlson, signed a letter of credit agreement and a letter of indemnity and reimbursement in favor of First Westroads on March 14, 1983. That same day, Mr. Carlson and his wife, Darlene M. Carlson, signed a personal guaranty for the letter of credit amount. The appellant in this matter, Michael McCormack, is an attorney who was representing Acoustical at the time this letter of credit transaction occurred. At a later date, McCormack also pledged to First Westroads fifty-two shares of Berkshire-Hathaway, Inc., stock as security in connection with the letter of credit transaction.
 
 
 6
 In September 1985, SAMBA honored a draw by Obaid on the letter of credit. SAMBA, in turn, drew on Citibank who, in turn, drew on NBC who, in turn, drew on First Westroads. All the banks in the chain honored the request.
 
 
 7
 Acoustical was dissolved via a certificate issued by the Nebraska Secretary of State for non-payment of taxes on April 16, 1987. First Westroads ultimately sold McCormack's pledged securities in partial satisfaction of the letter of credit amount.
 
 
 8
 In his complaint, McCormack alleges that he is the subrogee of the corporation, Acoustical, and the individuals, Gerald and Darlene Carlson. He asserts that he has been damaged by the loss of the pledged securities. He further asserts that none of the banks in the chain should have honored Obaid's draw because it was improper under the letter of credit arrangement. This complaint was filed on September 5, 1989.
 
 
 9
 On October 31, 1989, the Nebraska Secretary of State issued a certificate of revival for Acoustical which reinstated the corporation.
 
 II.
 A. Statutory Bar
 
 10
 In ruling on defendants' motions to dismiss, the district court held that any rights that the appellant holds via subrogation are through the corporation, Acoustical, and not through the Carlsons as individuals. The court correctly noted that subrogation involves an instance in which "one person pays a debt for which another is primarily liable and which in equity and good conscience should have been discharged by the latter." Scott v. Langvardt, 213 Neb. 854, 331 N.W.2d 799, 800 (1983). The district court held that Acoustical, not the Carlsons, was primarily liable on the letter of credit transaction. Thus, any of McCormack's rights of subrogation derive from Acoustical and are subject to all the defenses that might be raised against Acoustical. See Barnes v. Hampton, 198 Neb. 151, 252 N.W.2d 138, 139 (1977). We adopt the district court's reasoning and hold that this conclusion is correct.
 
 
 11
 The district court further held that McCormack could not assert his claims against First Westroads, NBC, and Citibank because the corporation, Acoustical, was barred from asserting such claims by Neb.Rev.Stat. § 21-20,104 (1987). This statute states in relevant part:
 
 
 12
 The dissolution of a corporation ... by the issuance of a certificate of dissolution by the Secretary ... shall not take away or impair any remedy available to or against such corporation ... for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution. Any such action or proceeding by or against the corporation may be prosecuted by the corporation in its corporate name.
 
 
 13
 Neb.Rev.Stat. § 21-20,104 (1987) (emphasis added).
 
 
 14
 Because McCormack started this action more than two years after Acoustical was dissolved, the district court held that § 21-20,104 prohibited appellant's asserted claims.
 
 
 15
 The district court came to this conclusion despite the operation of Neb.Rev.Stat. § 21-20,137 (1987). This provision suggests that claims initiated more than two years after the dissolution still could be viable because Acoustical was ultimately reinstated as a corporation in the State of Nebraska.
 
 
 16
 This court concluded that these two Nebraska statutes were not easily reconcilable when applied to the present case. As this particular fact situation raised an important issue of Nebraska law, we certified the following question to the Nebraska Supreme Court:
 
 
 17
 Whether Neb.Rev.Stat. § 21-20,137 permits a corporation that has been revived more than two years after it has been dissolved by the Secretary of State to maintain an action based on a claim that arose before the dissolution, despite Neb.Rev.Stat. § 21-20, 104's two-year limit on survival of remedy for claims of a dissolved corporation.
 
 
 18
 In McCormack v. Citibank, 241 Neb. 436, 489 N.W.2d 293 (1992) (per curiam), the Nebraska Supreme Court answered this question in the affirmative, holding that § 21-20,104 did not operate as a two-year limit in this situation.
 
 
 19
 The district court correctly held that any subrogation rights McCormack may have are through Acoustical. The decision by the Nebraska Supreme Court allows Acoustical to assert the claims advanced by McCormack. Therefore, McCormack, as purported subrogee of Acoustical, is not barred by statute from advancing his claims. Accordingly, we reverse the decision of the district court granting the motions to dismiss on the statutory bar ground, and we remand this case to the district court for reconsideration in light of the Nebraska Supreme Court's opinion.
 
 B. Privity
 
 20
 NBC and Citibank argued alternatively in their motions to dismiss that they were not in privity with Acoustical and they owed no duties to Acoustical. Therefore, these appellees argued, McCormack, as subrogee of Acoustical, could not maintain actions against them. The district court agreed and granted NBC and Citibank's motions to dismiss on this alternative ground as well.
 
 
 21
 This court's review of a district court's order to dismiss under Federal Rule of Civil Procedure 12(b)(6) is de novo. Concerned Citizens of Nebraska v. United States Nuclear Regulatory Comm'n, 970 F.2d 421, 425 (8th Cir.1992). We must follow the rule that dismissal is inappropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In determining whether dismissal is merited, the court must accept all well-pleaded allegations of the complaint as true, and all reasonable inferences therefrom must be construed favorably to the pleader. Morton v. Becker, 793 F.2d 185, 187 (8th Cir.1986).
 
 
 22
 After reviewing the record, we conclude that the dismissal standard has not been met. The relationships among Acoustical, First Westroads, NBC, and Citibank in the letter of credit transaction are far from clear. McCormack's complaint sufficiently alleges that there were connections between all four litigants which conceivably could entitle McCormack to relief against NBC and Citibank. This court holds that the district court's grant of dismissal based on failure to state a claim was therefore premature.
 
 III.
 
 23
 For the foregoing reasons, the judgment of the district court that appellant's causes of actions are barred by statute is reversed. Furthermore, the judgment of the district court granting dismissal in favor of NBC and Citibank based on lack of privity is also reversed. We remand to the district court for proceedings in light of the Nebraska Supreme Court decision and in accordance with this opinion.
 
 
 
 *
 THE HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation