**Roger G. SIEFKES, Plaintiff
and Appellee,**

v.

**WATERTOWN TITLE COMPANY and
Western Surety Company, Defendants,
Appellants, and Third Party Plaintiffs,**

v.

**Hubert G. HERZOG, a/k/a Herbert
Herzog, Third Party Defendants
and Appellees,**

v.

**FISCHER TWINS, INC., and Alfred
Fischer and Alvin Fischer, individually,
Third Party Defendants and Appellees.**

**Codington County Register of Deeds,
Third Party Defendant and Appellee.**

**Nos. 16208, 16227.**

Supreme Court of South Dakota.

Argued Oct. 11, 1988.

Decided March 8, 1989.

Todd D. Boyd of Gunderson, Evenson & Boyd, Clear Lake, for plaintiff and appellee.

John C. Wiles of Fox, Bartron, Wiles & Rylance, Watertown, for defendants, third party plaintiffs and appellants.

Thomas J. Green of Green, Schulz & Roby, Watertown, for third party defendant and plaintiff and appellee.

Timothy J. Weber, Eureka, for third party defendants and appellees.

Roger W. Ellyson, Codington County States' Atty., Watertown, for third party

defendant and appellee, Codington County Register of Deeds.

MORGAN, Justice.

This is an appeal from a declaratory judgment entered in the principal action and from a summary judgment entered in a third party action.[1] We affirm.

The principal controversy centers around the record title to a nine acre alfalfa field, abutting Highway 212 in the environs of Watertown and platted as Endres First Addition, Codington County, South Dakota. In the course of conveying title, the lot has been divided and conveyed as the east one half and the west one half and for the purposes of convenience will hereinafter be referred to respectively as the east property and the west property. The title problems raised herein involves the existence or non-existence at various times of a right of way easement over and across the North fifty feet of either or both of the properties as of the dates of certain transfers that will be discussed in detail later. Again for the purpose of convenience we will refer to the easement across the east property for the benefit of the west property as the east easement and the easement across the west property for the benefit of the east property as the west easement.

We next detail the parties and their respective positions in the case. This case literally "growed like Topsy." The first action was commenced by Roger Siefkes (Siefkes), owner of the east property, against the Watertown Title Company (Title Company) and its surety, Western Surety Company, seeking to recover damages, alleging that his property was encumbered by the east easement but that such was not shown by any entry in the abstract of title prepared and certified by Title Company on September 16, 1976. Title Company commenced a third party proceeding against the Codington County Register of Deeds

(ROD) seeking indemnity for negligent indexing. The trial court directed that Hubert G. Herzog, aka Herbert Herzog (Herzog), the record owner of the west property be joined as a real party in interest. Title Company responded by commencing a third party action against Herzog. Siefkes amended his complaint by seeking a declaratory judgment that the west easement existed and that the east easement did not.

Herzog, in turn, commenced a third party action against Title Company for failure to properly include the west easement claimed by Siefkes in an abstract to the west property prepared and certified by Title Company on May 10, 1984. Herzog also commenced third party proceedings against Alfred Fischer and Alvin Fischer, d/b/a Fischer Twins, Inc. (Fischers) from whom he had acquired the title to the west property, apparently by a property exchange.[2] Title Company also commenced another third party proceeding against ROD, alleging that the west easement was also not indexed.

Various motions for summary judgment were submitted, but before we discuss the motions and the results, it is necessary to detail the various property transfers which are established undisputably in the record. They are as follows:

By warranty deed dated February 18, 1976, and recorded March 1, 1976, James N. Endres conveyed to Roger Stenzel fee title to the east property together with the west easement.

By warranty deed dated and recorded February 18, 1976, James N. Endres conveyed to Gary Stenzel fee title to the west property subject to the west easement.

By right-of-way easement dated September 15, 1976 and recorded September 16, 1976, Roger Stenzel conveyed to Gary

---

1. Both judgments were initially appealed to this court on November 18, 1986, and were, after oral arguments, dismissed by order of this court dated October 7, 1987, 413 N.W.2d 377, because the judgments appealed from did not comply with SDCL 15–6–54(b). The summary judgment and declaratory judgment were amended by the trial court on March 7, 1988, to comply with SDCL 15–6–54(b). Therefore, when we speak of the trial court's judgment, we are referring to these amended judgments.

2. Fischers and Herzog are not parties to this appeal.

Stenzel the east easement (hereafter referred to as "reciprocal easement").

By warranty deed dated October 28, 1976 and recorded May 16, 1977, Gary and Roger Stenzel (Stenzels) became tenants in common to all of Endres First Addition. This conveyance is hereafter referred to as the "merger deed."

By contract for deed dated May 3, 1977, and recorded May 16, 1977, Stenzels agreed to convey the west property to Fischers in fee simple free and clear of any encumbrances.

By warranty deed dated September 28, 1981, and recorded February 26, 1982, Stenzels conveyed to Siefkes the east property together with the west easement (hereafter the "Stengel–Siefkes deed").

By warranty deed dated May 14, 1982, recorded May 17, 1982, Fischers conveyed the west property to Herzog subject to easements of record.

By warranty deed dated May 21, 1982, recorded June 22, 1982, Stenzels conveyed to Fischers fee title to the west property, subject to the west easement.

Two distinct actions for negligence lie against the Title Company in this proceedings. The first is Siefkes' claim involving the failure to properly abstract the reciprocal easement from Roger to Gary Stenzel showing the existence of the east easement. The second is Herzog's claim involving the failure to properly abstract the Stenzels–Siefkes deed so as to show the existence of the west easement.

The Title Company sought to escape liability from the Siefkes claim by urging that the doctrine of merger eliminated the east easement, arguing that the subsequent merger of the titles of the Stenzels by virtue of the merger deed terminated and extinguished the easement. The trial court agreed and no one but Siefkes has raised that determination as an issue in this appeal. Since Siefkes cannot appeal from a decision that is favorable to him, we deem that issue to be moot. *Bottum v. Herr*, 83 S.D. 542, 162 N.W.2d 880 (1968); *Gustafson v. Gate City Co-op. Creamery*, 80 S.D. 430, 126 N.W.2d 121 (1964).

The trial court, in fact, determined that the reciprocal easements were terminated by the merger deed. He went on, however, to determine that as to the west property, there exists a valid easement, created by the Stenzel–Siefkes deed. The Title Company asks us to reverse this determination upon the grounds that the creation of this easement is inequitable. It is argued that because neither the Stenzels–Fischer contract for deed for the west property, nor the unrecorded Stenzels–Siefkes purchase agreement for the east property, executed on August 22, 1981, described an easement over the west property, and because the consideration recited for the Stenzels–Siefkes warranty deed with easement was identical to the consideration recited in the purchase agreement without the easement, so far as it conveyed any interest in the west property the Stenzels–Siefkes deed was void *ab initio*.

Siefkes, in apparent response to Title Company's argument, seems to argue that regardless of Title Company's theory, the west easement exists because the merger deed was ineffective as to the west property only. Again, Siefkes prevailed before the trial court, so, unless we are willing to overturn the decision as to the west property because the trial court was in error as to the creation of the easement by the Stenzel–Siefkes deed, the alternative argument is moot.

■ We find Title Company's rather unique argument to be unpersuasive. Title Company relies on the provisions of SDCL 43–26–1 and *Langan v. VanDusen*, 79 S.D. 108, 108 N.W.2d 470 (1961). The statute provides: "An agreement to sell real property binds the seller to execute a conveyance in form sufficient to pass the title to the property." While this may be persuasive as to the liability of the Stenzels in a damage suit, it hardly furnishes a basis to hold the deed to be void ab initio. *Langan* merely relates to the interpretation of an agreement where it was disputed as to whether it was a lease or contract to sell. We therefore affirm the trial court's decision on the issue of the existence of the west easement.

■ We then examine the second issue raised by Title Company, that the trial court erred in granting summary judgment on the liability of ROD because of sovereign immunity. The doctrine of sovereign immunity derives from the South Dakota Constitution, Article III, Section 27, which provides: "The Legislature shall direct by law in what manner and in what courts suits may be brought against the state." This court has consistently held that it is the exclusive province of the legislature and not the courts to abrogate or limit the doctrine of sovereign immunity. In the absence of an express statutory waiver, this court strictly adheres to this doctrine. *Arcon Const. Co. v. S.D. Cement Plant,* 349 N.W.2d 407 (S.D.1984); *Kringen v. Shea,* 333 N.W.2d 445 (S.D.1983); *Merrill v. Birhanzel,* 310 N.W.2d 522 (S.D.1981); *High–Grade Oil Co., Inc. v. Sommer,* 295 N.W.2d 736 (S.D.1980).

Sovereign immunity also applies to political subdivisions of the state, such as counties, townships and school districts. *Williams v. Wessington Tp.,* 70 S.D. 75, 14 N.W.2d 493 (1944). Accordingly, since the legislature has not expressly waived immunity, Codington County is immune from suit as the State would be.

This court established the following three-step test to determine whether sovereign immunity applies to the state, its governmental subdivisions, or their employees:

(1) whether the [governmental unit] was the real party in interest; (2) whether the employee was sued in an official or personal capacity; and (3) whether the employee was exercising a discretionary or ministerial function.

*Reiman v. Solem,* 337 N.W.2d 804, 805 (S.D.1983); *Kruger v. Wilson,* 325 N.W.2d 851 (S.D.1982); *National Bank of South Dakota v. Leir,* 325 N.W.2d 845 (S.D.1982); *High–Grade Oil, supra.*

Applying this test to this case, we find that the county is the real party in interest and, therefore, sovereign immunity bars the action. *High–Grade Oil, supra.* Hav-

ing determined under the first step that the Register of Deeds is immune from suit, we need not reach the second and third steps of the test. *Reiman, supra.*

Title Company argues that the Register of Deeds is acting as an agent of the State; therefore, has waived sovereign immunity by purchasing liability insurance pursuant to SDCL 21–32–15 and 16. SDCL 21–32–15 provides that the State may obtain liability insurance for the State, its officers, agents and employees. SDCL 21–32–16 provides that to the extent that such liability insurance is purchased, the State shall be deemed to have waived sovereign immunity.[3]

We have narrowly construed these provisions on prior occasions. In *Holland v. Yankton School Dist. 63–3,* 375 N.W.2d 199, 199–200 (S.D.1985), we held that "[a]lthough school districts are state agencies ... the state by purchasing liability coverage for its officers, agents and employees did not under SDCL 21–32–16 waive sovereign immunity on behalf of school districts." (Citations omitted.) Likewise, in *Zens v. Chicago, Milwaukee, St. Paul & Pac. R.,* 386 N.W.2d 475 (S.D. 1986), this court held that the Aberdeen Township did not waive sovereign immunity under SDCL 21–32–16 by purchasing liability insurance. The reasoning of these cases extends to this case involving county officials. Therefore, the fact that Codington County purchased liability insurance did not operate to waive sovereign immunity pursuant to SDCL 21–32–15 and 16.

Since we have determined that the Register of Deeds was immune from suit as a matter of law, the trial court properly granted its motion for summary judgment.

We affirm.

WUEST, C.J., and HENDERSON and MILLER, JJ., concur.

SABERS, J., concurs in part and dissents in part.

---

**3.** The 1986 Legislature has enacted SDCL 21–32A covering the purchase of liability insurance by any public entity. However, this chapter went into effect on July 1, 1986, therefore does not apply in this case.

SABERS, Justice (concurring in part and dissenting in part).

I agree except for the majority's "narrow construction" of the statutes for purchase of insurance for agents and waiver of immunity to the extent of insurance coverage.

In South Dakota, the register of deeds is the state's agent for maintaining vital records and statistics. SDCL 34–25–4.1. Other "state" duties include maintaining records concerning secured transactions, tax liens, and motor vehicle titles. Many duties of the register of deeds involve acting as the state's agent for specific purposes, such as indexing and maintaining land title records. In fact, land title records may be destroyed only upon permission of the state records destruction board. SDCL 7–9–1. In this case, the Codington County Register of Deeds admitted in its answer that it was "a branch of County government and the State of South Dakota."

**21–32–15. Liability insurance—Purchase by state.** The state of South Dakota, through the commissioner of administration, may obtain and pay for public liability insurance to the extent and for the purposes considered expedient by the commissioner for the purpose of insuring the liability of the state, its officers, agents or employees.

**21–32–16. Waiver of immunity to extent of insurance coverage—Consent to suit.** To the extent such liability insurance is purchased pursuant to § 21–32–15 and to the extent coverage is afforded thereunder, the state shall be deemed to have waived the common law doctrine of sovereign immunity and consented to suit in the same manner that any other party may be sued.

I would interpret these statutes "realistically," not "narrowly." I would hold that the purchase of insurance under SDCL 21–32–15 and SDCL 21–32–16 is a waiver of the common law doctrine of sovereign immunity "to the extent coverage is afforded thereunder." For the state to purchase insurance and then hide behind the doctrine of sovereign immunity is unfair to injured parties and a windfall to the insurance company. To make matters worse in this case, the Codington County Register of Deeds purchased its own policy of insurance as permitted by SDCL 7–18–8, which provides:

Any board of county commissioners may obtain and pay for all forms of liability insurance, or in lieu thereof, make other arrangements, including entering into agreements with others, which agreements may create separate legal or administrative entities pursuant to chapter 1–24, to protect and assist the county in meeting obligations arising from such acts or omissions for which the county may be legally liable. The liability insurance coverage or other arrangement obtained shall protect the county officers and employees in the performance of official duties and against acts committed by them that could be reasonably considered to be within the scope of their official duties.

In other words, insurance premiums paid by the state and by the county for this type of protection are simply wasted by the "narrow construction" of *Holland, supra,* and *Zens, supra.* I would overrule both *Holland* and *Zens* to the extent necessary to conform to this dissent.