Douglas D. WEBB, Plaintiff,

v.

LAWRENCE COUNTY; Charles Crotty, in his individual capacity and official capacity as Lawrence County Sheriff; John Doe, in his individual capacity; and Jim Doe, in his individual capacity, Defendants.

No. Civ. 94–5086.

United States District Court,
D. South Dakota,
Western Division.

March 18, 1996.

Steven C. Beardsley, Lynn Jackson Shultz & Lebrun, Rapid City, SD, for Plaintiff.

Thomas E. Brady, Spearfish, SD, for Defendant.

## MEMORANDUM OPINION AND ORDER

BATTEY, Chief Judge.

### PROCEDURAL HISTORY

On December 2, 1994, plaintiff Douglas Webb (Webb) filed a complaint with this Court. Count I of Webb's complaint alleged a civil rights violation under 42 U.S.C. § 1983. Count II of Webb's complaint alleged a negligence cause of action. Webb's complaint sought relief in the form of compensatory and punitive damages and an award of attorney's fees. Defendants answered on December 23, 1994.

On November 15, 1995, defendants filed a motion for summary judgment on Count I of Webb's complaint, a motion to dismiss Count II of the Webb's complaint, and a motion to dismiss Webb's punitive damages claim. Webb filed his responses to the motions to dismiss on December 5, 1995. Webb filed his response to the motion for summary judgment on January 5, 1996.

### FACTS

In 1992 or 1993, Webb and accomplice Shannon Tighe committed a burglary in Lawrence County. They then traveled to Wyoming where they held a trucker up at gunpoint and stole his logging vehicle. While fleeing from authorities Webb stated that he "fired his weapon once straight out as a warning shot" to the pursuing law enforcement officers. (See Webb's response to defendant's statement of facts ¶ 6). After Webb was apprehended, he spent four or five months in a Wyoming jail. He was then transferred to the Lawrence County Jail on October 22, 1993, to face pending South Dakota charges.

When Webb was transferred to the Lawrence County Jail, he was placed in maximum security. Webb stated that he told one of the jailers that he should not be in maximum security. Shannon Tighe was placed in Minimum I. Defendants stated Shannon Tighe was not placed in maximum security

because they were attempting to keep the crime partners separate. Webb stated that there was no requirement that he be placed in maximum security. He claimed he could have been placed in either the Minimum I or II sections. Defendants stated that Minimum II was full. On Webb's third night in the jail, at his request, Webb moved into a cell with inmate Greg Wyman. Webb moved because Wyman asked him to and because his other cellmate was leaving and he did not want to be in a cell with incoming federal prisoners. Wyman was being incarcerated for convictions of rape and sexual contact with a minor. The jailers were aware of this fact. None of the jail staff told Webb the crimes for which Wyman was incarcerated. In the maximum security section of the jail, the inmates are locked down in their cells at night and allowed to move freely through the commons area during the day.

The jail does have an emergency button; however, it is in the commons area so inmates do not have access to it when they are locked down in their cells at night. The maximum security section has a security camera, but it does not provide a view into the individual cells. The defendants stated that jailers were in the cells approximately every thirty minutes. Webb, however, stated that the jailers only came into the cell block once a day. The jailers did not receive any specific training regarding which inmates may be more likely to be sexually assaulted and which inmates may be more likely to sexually assault others.

On the second night Webb was celled with Wyman, Wyman forced Webb to perform oral sex on him. Webb stated that Wyman told him he had a shank in the cell and that he would rather die than serve the three life sentences he was facing. Webb stated that Wyman also told him he was going to be Wyman's "bitch and little girl." Webb was subsequently forced to perform oral sex for the following three nights. On the fourth night, Wyman attempted to have anal intercourse with Webb. Wyman also once attempted to make Webb perform oral intercourse on him during the day but was interrupted when jailers entered the cell block. Prior to lockdown on October 31,

1993, the fifth night in Wyman's cell, Webb left jailers a note stating that he had been raped on the previous nights. Thirty minutes after the note was found, Webb was removed from Wyman's cell. Webb did not notify the jailers of the rape sooner because he could not think of a way to give them a note without Wyman finding out. At the time the incident occurred, Webb was five foot four inches tall and weighed 120 pounds.

## COUNT I—CIVIL RIGHTS CLAIM

Count I of Webb's complaint is based on a civil rights claim under 42 U.S.C. § 1983. Webb alleged that the following acts and omissions by the defendants demonstrated a reckless disregard for his civil rights:

1. Defendants and other guard and penitentiary employees knowingly and negligently transferred Webb to Wyman's cell even though they were aware of the severe danger to Webb;

2. Defendants failed to properly supervise the cell block and failed to provide for the safety and well-being of Webb;

3. Defendants knew or should have known of the existence of attacks and sexual assaults upon inmates, and defendants failed to develop adequate protection or policies to minimize or eliminate such assaults;

4. Defendants evidenced a callous and reckless disregard for Webb's constitutional right to be free from cruel and unusual punishment by permitting double-celling of inmates;

5. Defendants failed to provide adequate segregation and classification of inmates; and

6. Defendants failed to provide adequate rounds or watch to prevent such assaults from taking place.

Defendants have moved for summary judgment on Count I.

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and

that [he] is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). In determining whether summary judgment is appropriate, the facts and inferences are viewed in the light most favorable to the nonmoving party. Because Webb is the party opposing summary judgment in this case, all factual inferences will be drawn in his favor, and summary judgment may not be granted if he presents a triable issue. *Grinder v. Gammon,* 73 F.3d 793, 795 (8th Cir.1996). The burden is placed on the moving party to establish both that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–90, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings. The nonmoving party must then set forth specific facts by affidavit or other evidence showing that a genuine issue of material fact exists.

In examining the evidence in summary judgment motions, the Court must apply the appropriate substantive evidentiary burden, in this case a preponderance of the evidence. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253–55, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). The nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356, and "[w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*

**B. Discussion**

 Prison officials have a duty to protect prisoners from assaults by other prisoners.

*Farmer v. Brennan,* 511 U.S. 825, 831, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). As the Eighth Circuit Court of Appeals has stated, "The Eighth Amendment prohibition against cruel and unusual punishment imposes upon correctional officers the obligation to protect inmates from harm by other inmates." *Williams v. Mueller,* 13 F.3d 1214, 1216 (8th Cir.1994).

 In order for a prisoner injured by another prisoner to be able to recover against prison officials for failing to protect him, two requirements must be met. *Farmer,* 511 U.S. at 833, 114 S.Ct. at 1977. First, the deprivation of the plaintiff's constitutional rights must be "sufficiently serious." *Id.* In order to satisfy this element in failure to protect cases, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* The Court need not determine whether or not the conditions in the Lawrence County jail posed a substantial risk of serious harm to Webb because he fails to meet the second prong of the test.

 The second requirement to state a valid failure to protect claim is that the prison official must have a culpable state of mind. *Id.* In cases involving intra-inmate violence, the official must be deliberately indifferent to inmate health or safety. *Id.* It is clearly established that a negligent state of mind is not sufficient to constitute deliberate indifference. *Id.* at 835, 114 S.Ct. at 1978. In defining deliberate indifference the Supreme Court in *Farmer* held, "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S.Ct. at 1979. In *Farmer,* the Court went on to state, "Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial

risk of serious harm." *Id.* at 842, 114 S.Ct. at 1981.

■ In this case, Webb has failed to present any evidence which would establish that defendants were aware of an excessive risk to inmate health or safety. Although defendants were aware of the fact that Wyman was a sex offender, there is no evidence that Wyman had ever assaulted or threatened any other inmates or caused any problems whatsoever while he was incarcerated. The fact that an inmate is incarcerated for a sexual offense does not per se establish the fact that he constitutes a pervasive risk of harm to other inmates.

Webb does not have to establish that defendants knew he was especially likely to be assaulted by Wyman. *See id.* at 843, 114 S.Ct. at 1982. If defendants knew that inmate rape was pervasive and uncontrollable in the Lawrence County jail, they would not need to know specifically that Wyman would attack Webb. *See id.* In general, inmate rape and assault is pervasive in this country's prison system. *Martin v. White,* 742 F.2d 469, 472 (8th Cir.1984). This pervasiveness is not, however, sufficient to put the defendants in this case on notice that there was an excessive risk of harm at their facility. Webb has presented no evidence nor has he made any allegations that inmate rape is a common occurrence in the Lawrence County jail. Webb has not even alleged that any other inmates have been assaulted or raped in the Lawrence County jail.

■ "When prison officials know an inmate faces a substantial risk of serious harm from another inmate and fail to take reasonable measures to lessen the risk, the Eighth Amendment is violated." *Erickson v. Holloway,* 77 F.3d 1078, 1080 (8th Cir.1996). In this case, defendants cannot be held accountable for the assault on Webb because they had no reason to suspect that inmates in the Lawrence County jail faced a substantial risk of serious harm from other inmates.

Before the *Farmer* case was decided by the Supreme Court, an inmate could prevail upon a lesser showing in failure to protect cases. *Jensen v. Clarke,* 73 F.3d 808, 811 (8th Cir.1996). Under the old standard, "deliberate indifference, or reckless disregard, of a risk to inmate safety required proof of a pervasive risk of harm to inmates and a failure to respond reasonably to that risk on the part of prison officials." *Id.* at 810–11. The case of *Falls v. Nesbitt,* 966 F.2d 375, 378 (8th Cir.1992) was decided under this pre-*Farmer* standard. In *Falls,* the plaintiff was stabbed by his cellmate. *Id.* Before sharing a cell, the plaintiff did not know the inmate who stabbed him and did not have any reason to fear him. *Id.* "A single episode of violence, without warning or suspicion, is insufficient to establish a pervasive risk of harm, particularly when the injured inmate views the attack as an isolated incident." *Id.* at 379. The Eighth Circuit Court of Appeals held that,

> A "pervasive risk of harm" requires evidence of frequent violence or sexual assaults which places a prisoner or group of prisoners in reasonable fear for their safety; and prisoners must apprise the prison officials of the existence of the problem and the need for protective measures. In every case, a "pervasive risk" is something more than a single incident and something less than a riot.

In *Falls,* the Court found that the plaintiff did not have a valid 1983 claim against prison officials. *Id.* at 380.

Webb does not allege or present evidence that sexual assaults are a common occurrence at the Lawrence County jail. Although there is evidence that Wyman was a sexual offender, there is no allegation or evidence that he had ever assaulted any other inmates, before Webb, while he was incarcerated. Webb obviously had no reason to fear Wyman because he had no objection to becoming Wyman's cellmate. In fact, Webb requested that he be moved in with Wyman. Additionally, it is undisputed that Webb did not notify prison officials of his fear of Wyman or the assaults until he had been assaulted on four straight days. Thirty minutes after jail officials were notified, Webb was removed from Wyman's cell. It is clear that Webb's claim cannot even withstand summary judgment under the less stringent pre-*Farmer* analysis.

## COUNT II—NEGLIGENCE

Count II of Webb's complaint is based on negligence. This Court has subject matter jurisdiction over Webb's negligence claim based on diversity of citizenship, 28 U.S.C. § 1332. Thus, South Dakota law will be applied to the negligence claim. Webb alleged the following acts and omissions by the defendants demonstrated negligence:

1. Failure to provide adequate segregation and classification of inmates to prevent physical and sexual assaults;

2. Failure to adequately and properly supervise and control the inmates;

3. Failure to adequately and properly protect inmates from sexual assaults;

4. Failure to develop adequate policies and procedures to minimize or eliminate sexual assaults and attacks upon inmates;

5. Failure to provide for proper supervision or adequate guards in the cell block area;

6. Failure to provide adequate rounds or watch to prevent assaults from taking place;

7. Permitting the double-celling of Webb with an inmate with violent tendencies; and

8. Failure to provide adequate protection for Webb despite his particular vulnerabilities to sexual assault, namely his age, physical size, and his status as a new admittee to the correctional facility.

Defendants have moved for judgment on the pleadings on Count II pursuant to Fed. R.Civ.P. 12(c).

### A. Motion for Judgment on the Pleadings Standard

This motion for judgment on the pleadings is reviewed under the standard that governs Rule 12(b)(6), failure to state a claim, motions. *See Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990). A plaintiff's claim should not be dismissed for failure to state a claim unless it is patently clear that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *McCormack v. Citibank, N.A.,* 979 F.2d 643, 646 (8th Cir.1992); *Murphy v. Lancaster,* 960 F.2d 746, 748 (8th Cir.1992);

and 5A Charles A. Wright & Arthur R. Miller *Federal Practice & Procedure* § 1357, 325 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). For purposes of a motion to dismiss for failure to state a claim, all well-pleaded factual allegations contained in plaintiff's complaint are taken as true. *McCormack,* 979 F.2d at 646; *Murphy,* 960 F.2d at 748; and 5A Wright & Miller § 1357, 304. However, legal conclusions which are alleged or which are drawn from the pleaded facts do not have to be accepted as true for purposes of a 12(b)(6) motion to dismiss. *Blackburn v. Fisk Univ.,* 443 F.2d 121, 124 (6th Cir.1971); *Olpin v. Ideal Nat'l Ins. Co.,* 419 F.2d 1250, 1255 (10th Cir.1969), *cert. denied,* 397 U.S. 1074, 90 S.Ct. 1522, 25 L.Ed.2d 809 (1970).

■ Because a motion pursuant to Rule 12(b)(6) tests the formal sufficiency of the plaintiff's statement of a claim for relief, as opposed to the merits of such a claim, motions pursuant to Rule 12(b)(6) must be read in light of Fed.R.Civ.P. 8(a), which sets forth the requirements for pleading a claim. 5A Wright & Miller § 1356, 294–96. Rule 8(a) states in pertinent part that "[a] pleading which sets forth a claim for relief, ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief, ..." Thus, the issue presented by defendants' Rule 12(c) motion is whether, taking all well-pleaded factual allegations in the complaint to be true, Webb has succeeded in stating a claim that would entitle him to relief against the defendants under some set of facts.

### B. Discussion

Defendants assert that SDCL §§ 3–21–8, 3–21–9, and 3–21–10 provide them with immunity from Webb's negligence claim. SDCL § 3–21–8 provides:

No person, political subdivision or the state is liable ... for failure to provide sufficient equipment, personnel, programs, facilities or services in a prison or other correctional facility.

SDCL § 3–21–9 provides:

No person, political subdivision or the state is liable ... for any injury caused by

or resulting from ... (4) a prisoner to any other prisoner....

SDCL § 3–21–10 provides:

No waiver of state immunity by statute or, where permitted, by any officer or agent of the state may constitute or be interpreted as a waiver of the state's immunity from lawsuits in federal court.

■■■ Webb contends that defendants waived this immunity by their purchase of liability insurance. Webb cites SDCL §§ 21–32–15[1] and 21–32–16[2] for this proposition. These statutes are only applicable, however, when the state purchases the insurance. *See Siefkes v. Watertown Title Co.*, 437 N.W.2d 190, 193 (S.D.1989). When a county purchases liability insurance for its employees and officials, SDCL §§ 21–32–15 and 21–32–16 do not operate to waive immunity. *Id.*

■■■ Webb also contends that the immunity provided by SDCL §§ 3–21–8, 3–21–9, and 3–21–10 is preempted by federal law and is inconsistent with federal law. This Court has held that these provisions are preempted when the underlying claim is brought pursuant to 42 U.S.C. § 1983 for an *intentional* violation of personal civil rights. *McKenzie v. Crotty*, 738 F.Supp. 1287, 1289 (D.S.D.1990). Webb's underlying claim in this instance, however, is a *negligence* claim governed by South Dakota law. Section 1983 is inapplicable to negligence claims. *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986). Accordingly, preemption is not appropriate under these circumstances. Similarly, Webb's claim that the application of sovereign immunity is inconsistent with the laws of the United States is without merit. Webb claims that the application of SDCL §§ 3–21–8, 3–21–9, and 3–21–10 conflicts with the objectives of 42 U.S.C. § 1983. Because negligence on the part of the defendants is not even a recogniz-

able claim under section 1983, barring this claim under state law cannot create a conflict with federal law.

■■■ Finally, Webb argues that SDCL §§ 3–21–8 and 3–21–9 violate the open courts provision of the South Dakota Constitution. Webb contends that this immunity would prohibit any prisoner actions against their jailers. The immunity does not, however, prohibit inmates from bringing lawsuits against prison officials pursuant to federal law. Thus, inmates do have an adequate remedy at law for certain civil rights violations which occur during the course of their incarceration.

## CONCLUSION

Because there is no evidence that defendants suspected that inmates in the Lawrence County jail faced a substantial risk of serious harm from other inmates, defendants are entitled to summary judgment pursuant to *Farmer v. Brennan* on Count I of the complaint. In addition, because defendants are immune from Webb's negligence claim, defendants are entitled to judgment on the pleadings on Count II of the complaint. The resolution of defendants' motion for summary judgment on Count I and motion for judgment on the pleadings on Count II makes defendants' motion for judgment on the pleadings regarding punitive damages moot. Accordingly, it is hereby

ORDERED that defendants' motion for summary judgment on Count I of Webb's complaint (Docket # 23) is granted.

IT IS FURTHER ORDERED that defendants' motion for judgment on the pleadings on Count II of Webb's complaint (Docket # 19) is granted.

IT IS FURTHER ORDERED that defendants' motion for judgment on the pleadings

---

1. SDCL § 21–32–15 reads as follows:

 The state of South Dakota through the commissioner of administration, may obtain and pay for public liability insurance to the extent and for the purposes considered expedient by the commissioner for the purpose of insuring the liability of the state, its officers, agents or employees.

2. SDCL § 21–32–16 reads as follows:

 To the extent such liability insurance is purchased pursuant to § 21–32–15 and to the extent coverage is afforded thereunder, the state shall be deemed to have waived the common law doctrine of sovereign immunity and consented to suit in the same manner that any other party may be sued.

regarding the punitive damages claim (Docket # 21) is denied as moot.