# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 96-2096

———————

Douglas D. Webb,                      *
                                      *
        Appellant,                    *
                                      *
    v.                                *
                                      * Appeal   from   the   United
                                      States
Lawrence County, South Dakota;                              *
                                      District
                                      Court
                                      for
                                      the
Charles Crotty, in his individual                          *
                                      District
                                      of
                                      South
                                      Dakota
capacity and official capacity as                          *
Lawrence County Sheriff,     *
                             *
        Appellees.           *

———————

                    Submitted:   December 10, 1996

                        Filed:   May 14, 1998

———————

Before McMILLIAN, JOHN R. GIBSON and MAGILL, Circuit
    Judges.

_____

McMILLIAN, Circuit Judge.

Douglas D. Webb appeals from a final order entered in the District Court[1] for the

[1]The Honorable Richard H. Battey, Chief Judge, United States District Court for the District of South Dakota.

District of South Dakota granting summary judgment in favor of defendants Lawrence County, Charles Crotty, the sheriff of Lawrence County, and John Doe and Jim Doe, employees of the sheriff's department (collectively defendants), on his 42 U.S.C. § 1983 prisoner civil rights claim alleging an Eighth Amendment violation and dismissing his pendent state negligence claim. <u>Webb v. Lawrence County</u>, 950 F. Supp. 960 (D.S.D. 1996) (memorandum opinion and order). For reversal, Webb argues the district court erred in (1) holding defendants were not deliberately indifferent to his safety as a matter of law (count I) and (2) dismissing his state negligence claim on the ground of sovereign immunity (count II). For the reasons discussed below, we affirm the judgment of the district court.

The district court had subject matter jurisdiction of this 42 U.S.C. § 1983 civil rights action under 28 U.S.C. § 1343. The district court also had supplemental jurisdiction over the pendent state negligence claim under 28 U.S.C. § 1367. (In addition, there was an independent jurisdictional basis-- diversity of citizenship under 28 U.S.C. § 1332-- for the state negligence claim.) The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a)(1), and this court has appellate jurisdiction under 28 U.S.C. § 1291.

The following statement of facts is taken in large part from the memorandum opinion and order of the district court. Webb and an accomplice committed various crimes in South Dakota and Wyoming. After Webb was apprehended, he spent several months in jail in Wyoming, and in October 1993 he was transferred to the Lawrence County jail to face the pending South Dakota charges. He was placed in maximum security. At the time Webb was 19 years old, about 5'4" tall and weighed about 120 pounds. Defendants did not place him in one of two minimum security sections in the jail because they wanted to separate him from his accomplice (the accomplice had been placed in one of two minimum security sections) and because the other minimum security section was full. Initially, Webb shared a cell with another inmate. Then Webb moved into a cell with Greg Wyman, another maximum security inmate.

Apparently Webb's first cellmate was leaving the jail and Webb did not want to share a cell with incoming federal prisoners. Defendants knew that Wyman had been convicted of sex offenses, specifically, rape and sexual contact with a minor.

At night the maximum security cells are locked down. During the day the inmates can move around in the commons area. There is an emergency alarm button located in the commons area, but the alarm is not accessible when the cells are locked down at night. There is also a security surveillance camera in the maximum security section, but the camera does not provide a view inside the individual cells. Defendants stated that jailers checked the cells every 30 minutes; however, Webb stated that jailers only came into the cell block once a day.

Webb alleged that Wyman sexually assaulted him repeatedly. Webb did not tell anyone about the assaults because he believed Wyman had a knife and he was afraid Wyman would retaliate against him. After four days, Webb managed to leave a note in the cell bars just before lockdown informing the jailers that he had been sexually assaulted. Webb did not notify the jailers sooner because he could not think of a way to give them the note without alerting Wyman. Thirty minutes after discovering the note, the jailers moved Webb out of the cell.

In December 1994 Webb filed this civil rights action in federal district court against defendants alleging violations of his constitutional rights and state tort law. He alleged defendants demonstrated a reckless disregard for his constitutional rights by failing to protect him from inmate violence in violation of the Eighth Amendment (count I). He alleged defendants transferred him to Wyman's cell even though they knew Wyman was a sexual predator, failed to properly supervise the cell block, failed to develop adequate protection or policies to minimize or eliminate inmate sexual assaults, failed to stop double-celling inmates, and failed to adequately classify and segregate

inmates. In his pendent state tort claim,[2] Webb alleged essentially the same acts and omissions as those alleged in his constitutional claim. He specifically alleged that defendants failed to adequately protect him from inmate sexual assault, despite his obvious vulnerability to such assault because of his youth, physical size, and status as a new admittee to the jail.

Defendants filed a motion for summary judgment on count I and a motion to dismiss count II for failure to state a claim. The district court granted summary judgment in favor of defendants on the constitutional claim (count I) because Webb failed to present any evidence that defendants had reason to suspect that inmates in the jail faced a substantial risk of sexual assault from other inmates. 950 F. Supp. at 965 (noting that although inmate rape and assault is pervasive in nation's prison system, pervasiveness is not sufficient to put defendants on notice of excessive risk of serious harm in absence of evidence or allegations that inmate rape was common occurrence in this jail). The district court also dismissed the state negligence claim (count II) because defendants were protected by sovereign immunity. Id. at 967. The district court held that the county had not waived sovereign immunity by purchasing liability insurance. Id. The district court also held that federal law did not preempt the sovereign immunity defense and that sovereign immunity did not deny a judicial remedy in violation of the state constitution's open courts provision, S.D. Const. art. VI, § 20, because Webb could file a 42 U.S.C. § 1983 civil rights action. 950 F. Supp. at 967. This appeal followed.

---

[2]The district court noted that there was also an independent jurisdictional basis for count II-- diversity of citizenship-- and applied South Dakota law to the negligence claim. 950 F. Supp. at 966.

EIGHTH AMENDMENT CLAIM

Webb first argues the district court erred in granting summary judgment in favor of defendants on his constitutional claim (count I) because there was no evidence that defendants were deliberately indifferent to his safety as a matter of law. He argues that there was circumstantial evidence of a substantial risk of serious harm because defendants knew that Wyman was a sexual predator who obviously posed a substantial risk of serious harm especially to young and physically slight inmates. Webb argues defendants disregarded that obvious risk and thus failed to protect him from inmate assault. We disagree.

We review the grant of summary judgment de novo. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of identifying "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. at 324. Although we view the facts in a light most favorable to the non-moving party, in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit.

Webb's constitutional claim is based on an alleged violation of his Eighth Amendment rights.

The Eighth Amendment to the United States Constitution proscribes the infliction of "cruel and unusual punishments." The Supreme Court counsels that this amendment imposes upon prison officials the duty to "provide humane conditions of confinement." That duty, among other things, requires those officials to take reasonable measures to "protect prisoners from violence at the hands of other prisoners." The Eighth Amendment imposes this duty because being subjected to violent assaults is not "part of the penalty that criminal offenders pay for their offenses."

In order to prevail on an Eighth Amendment failure-to-protect claim, [an inmate] must make two showings. First, [the inmate] must demonstrate that [he or she is] "incarcerated under conditions posing a substantial risk of serious harm." The second requirement concerns the state of mind of the prison official who is being sued. It mandates that the [inmate] show that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." This subjective requirement is necessary because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment."

Jensen v. Clarke, 73 F.3d 808, 810 (8th Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825 (1994); other citations omitted); see also Erickson v. Holloway, 77 F.3d 1078, 1080 (8th Cir. 1996).

We agree with the district court that Webb failed to create a genuine issue of material fact under Farmer v. Brennan's subjective knowledge standard. There was no evidence that defendants actually knew that Wyman posed a substantial risk of harm to Webb. Although defendants knew that, in general, inmate rape and assault is pervasive in this nation's prison system, there was no evidence or allegations that inmate rape is a common occurrence in this particular jail. Although defendants knew that Wyman was a sexual offender, there was no evidence that Wyman had assaulted

-7-

any other inmates or caused any problems while incarcerated. Defendants also knew that Webb had requested Wyman as a cellmate. Defendants were not aware of Wyman's threats or assaults because Webb did not report them; however, once they learned of the assaults, they immediately moved Webb out of the cell.

We also agree with the district court that defendants' knowledge was insufficient to satisfy the lesser objective knowledge standard this circuit applied in prisoner assault cases before Farmer v. Brennan. Cf. Falls v. Nesbitt, 966 F.2d 375, 379 & n.5 (8th Cir. 1992) (noting in pre-Farmer v. Brennan case that a single episode of violence, without warning or suspicion, is insufficient to establish a pervasive risk of harm, particularly when plaintiff views attack as an isolated incident). Even assuming for purposes of analysis that the risk of sexual assault faced by young, physically slight inmates like Webb was obvious, and thus sufficient to put defendants on notice of its existence, "Farmer [v. Brennan] specifically rejects the idea that liability may be found when a risk is so 'obvious that is should [have been] known.'" Jensen v. Clarke, 73 F.3d at 811, citing Farmer v. Brennan, 511 U.S. at 836.

STATE NEGLIGENCE CLAIM

Webb next argues the district court erred in dismissing his state negligence claim (count II) for failure to state a claim upon which relief could be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) motions must be read in light of Fed. R. Civ. P. 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The issue is whether, taking all well-pleaded factual allegations in the complaint to be true, the complaint states a claim that would entitle the plaintiff to relief against the defendants under some set of facts.

As a preliminary matter, defendants argue the waiver of sovereign immunity issue has not been preserved for appellate review. However, Webb raised the issue in

the district court in his brief in response to defendants' motion for judgment on the pleadings on count II.  Appellant's Appendix at 41-42.

Defendants argued in the district court that sovereign immunity barred Webb's state negligence claim, citing S.D. Codified Laws §§ 3-21-8, 3-21-9 and 3-21-10 (Michie 1994).[3]  Webb argued that defendants waived sovereign immunity by purchasing liability insurance, citing S.D. Codified Laws §§ 21–32–15, 21-32-16 (Michie 1987).[4]  The district court held the fact that the county had purchased liability

---

[3]S.D. Codified Laws § 3-21-8 (Michie 1994) provides:  "No person, political subdivision or the state is liable for failure to provide a prison, jail or penal or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, programs, facilities or services in a prison or other correctional facility."

S.D. Codified Laws § 3-21-9 (Michie 1994) provides in part that "[n]o person, political subdivision or the state is liable . . . for any injury caused by or resulting from . . . (4) a prisoner to any other prisoner; or (5) services or programs administered by or on behalf of the prison, jail or correctional facility."

S.D. Codified Laws § 3-21-10 (Michie 1994) provides: "No waiver of state immunity by statute or, where permitted, by any officer or agent of the state may constitute or be interpreted as a waiver of the state's immunity from lawsuits in federal court."

[4]S.D. Codified Laws § 21-32-15 (Michie 1987) provides:  "The state of South Dakota, through the commissioner of administration, may obtain and pay for public liability insurance to the extent and for the purposes considered expedient by the commissioner for the purpose of insuring the liability of the state, its officers, agents or employees."

S.D. Codified Laws § 21-32-16 (Michie 1987) provides:

    To the extent such liability insurance is purchased pursuant to § 21-32-15 and to the extent coverage is afforded thereunder, the state

insurance did not operate as a waiver of sovereign immunity because S.D. Codified Laws §§ 21-32-15 and 21–32-16 applied only to the state and not to state agencies or counties. 950 F. Supp. at 967, citing Siefkes v. Watertown Title Co., 437 N.W.2d 190, 193 (S.D. 1989) (Siefkes) (holding county's purchase of liability insurance did not operate as waiver of sovereign immunity). For the reasons discussed below, we hold Siefkes does not apply and that the county waived sovereign immunity by participating in a risk sharing pool or purchasing liability insurance. We agree with the district court that Webb failed to state a claim as a matter of law because S.D. Codified Laws § 3-21-9 provided defendants with a complete defense to his state negligence claim.

In Siefkes the principal controversy involved the record title to an alfalfa field, specifically the existence of a right of way easement over either or both the east and west parts of the field. In the first action the owner of the east part (Siefkes) sued the title company and its surety for damages, alleging that his property was encumbered by the easement which was not shown by any entry in the abstract of title prepared and certified by the title company. The title company then brought a third party action against the county register of deeds seeking indemnity for negligent indexing. The state trial court directed the owner of the west part (Herzog) be joined as a real party in interest. The title company filed a third party action against Herzog. Siefkes then amended his complaint to seek a declaratory judgment that the west easement existed and the east easement did not. Herzog then filed a third party action against the title company for failure to include the west easement in the abstract of title prepared and certified by the title company and against the former owners of the west part. The title company also filed a third party action against the county register of deeds alleging that the west easement was also not indexed.

---

shall be deemed to have waived the common law doctrine of sovereign immunity and consented to suit in the same manner that any other party may be sued.

After reviewing in detail the various property transfers, the court identified two distinct actions for negligence against the title company-- Siefkes's claim involving the failure to properly abstract the reciprocal easement from Roger to Gary Stenzel showing the existence of the east easement and Herzog's claim involving the failure to properly abstract the Stenzels-Siefkes deed so as to show the existence of the west easement. The state trial court found that the doctrine of merger had eliminated the east easement but that the west easement was valid. On appeal, the state supreme court affirmed the state trial court's decision on the existence or non-existence of the easements.

The court then examined the question which is at issue in the present case, that is, whether the county had waived sovereign immunity by purchasing liability insurance. Sovereign immunity applies to political subdivisions of the state, such as counties, townships and school districts. The title company argued that the county, acting as an agent of the state, waived sovereign immunity by purchasing liability insurance pursuant to S.D. Codified Laws §§ 21-32-15, -16. As noted in the margin, § 21-32-15 provides that the state may obtain liability insurance for the state, its officers, agents, and employees; § 21-32-16 provides that to the extent that such liability insurance is purchased, the state shall be deemed to have waived sovereign immunity. The court noted that it had narrowly construed provisions waiving sovereign immunity and held that the fact that the county had purchased liability insurance did not operate to waive sovereign immunity under provisions deeming the state to have waived sovereign immunity by purchasing liability insurance. 437 N.W.2d at 193, citing Holland v. Yankton School District No. 63-3, 375 N.W.2d 199, 199-200 (S.D. 1985) (holding that although school districts are state agencies, the state by purchasing liability coverage for its officers, agents and employees did not waive sovereign immunity on behalf of school districts), and Zens v. Chicago, Milwaukee, St. Paul & Pacific R.R., 386 N.W.2d 475 (S.D. 1986) (holding township did not waive sovereign immunity by purchasing liability insurance).

The court acknowledged in a footnote that the legislature had enacted S.D. Codified Laws § 21-32A,[5] covering the purchase of liability insurance by any public

---

[5]5S.D. Codified Laws ch. 21-32A (Michie 1987) provides:

**21-32A-1. Waiver of sovereign immunity to extent of risk sharing pool or insurance coverage**. To the extent that any public entity, other than the state, participates in a risk sharing pool or purchases liability insurance and to the extent that coverage is afforded thereunder, the public entity shall be deemed to have waived the common law doctrine of sovereign immunity and shall be deemed to have consented to suit in the same manner that any other party may be sued. The waiver contained in this section and §§ 21-32A-2 and 21-32A-3 is subject to the provisions of § 3–22–17.

**21-32A-2. Immunity of employees, officers or agents-- Affirmative defense.** Except insofar as a public entity participates in a risk sharing pool or insurance is purchased pursuant to § 21-32A-1, any employee, officer or agent of the public entity, while acting within the scope of his employment or agency, whether such acts are ministerial or discretionary, is immune from suit or liability for damages brought against him in either his individual or official capacity. The immunity recognized herein may be raised by way of affirmative defense.

**21-32A-3. Immunity of public entities-- Affirmative defense.** Except insofar as a public entity participates in a risk sharing pool or insurance is purchased pursuant to § 21-32A-1, any public entity is immune from liability for damages whether the function in which it is involved is governmental or proprietary. The immunity recognized herein may be raised by way of affirmative defense.

Section 3-22-17 (Michie 1994) provides in part:

Nothing in this chapter may be construed to be in conflict with or to expand the scope of governmental or sovereign immunity or any waiver of governmental or sovereign immunity contained in the state

entity, other than the state, but did not apply it because the provision went into effect on July 1, 1986, well after all the property transfers occurred, and had no retroactive effect.  437 N.W.2d at 103 n.3; see Ritter v. Johnson, 465 N.W.2d 196, 198 n.3 (S.D. 1991) (refusing to reach constitutionality of waiver provision because it did not go into effect until after accident at issue and has no retroactive effect).  Counties are included in the statutory definition of the term "public entities."  S.D. Codified Laws § 3-22-2(12) (Michie Supp. 1997).  Unlike Siefkes, this provision was in effect at the time when Webb was assaulted by Wyman in jail and therefore does apply in the present case.

Brown v. Egan Consolidated School District No. 50-2, 449 N.W.2d 259, 262 (S.D. 1989) (Brown), shows how § 21-32A-1 operates.  That case involved an accident that occurred in January 1988 between the plaintiff (Brown) and a school bus owned by the school district and operated by another school district employee.  (As noted above, § 21-32A-1 became effective July 1, 1986.)  The school district had purchased liability insurance.  Brown suffered serious injuries and sued the school district to the extent of its insurance coverage.  The school district court filed a motion for summary

Constitution, statute, judicial opinion, ordinance, resolution or tort claims act except as provided in § 3-22-10 [which refers to payment of claims from the fund] which may be construed only to extend sovereign immunity to the maximum extent allowed under the state or federal constitutions.

S.D. Codified Laws ch. 3-22, enacted in 1986, established the public entity pool for liability.  The state supreme court has presumed that the legislature established the fund as a substitute for traditional liability insurance.  See Kyllo v. Panzer, 535 N.W.2d 896, 900 (S.D. 1995) (reviewing history of sovereign immunity legislation following 1985 decision which upheld as constitutional legislation imposing limitations and conditions on the operation of sovereign immunity, but held that the state's participation in a risk sharing pool did not waive sovereign immunity because plain language of statute required purchase of traditional liability insurance, not self-insurance through risk sharing pool).

judgment, claiming that another statute, § 13-29-1, created an independent statutory basis for sovereign immunity that had not been waived by § 21-32A-1. The state trial court reconciled the two provisions by holding that sovereign immunity still existed under § 13-29-1 but had been waived under § 21-32A-1 to the limit of the liability insurance. On appeal, the school district argued there were three independent bases for sovereign immunity-- common law, the state constitution, and particular statutes. The school district court conceded that § 21-32A-1 waived common law and constitutional immunity but argued that it did not waive what it called the "independent statutory immunity" for operation of school buses contained in § 13-29-1, which provided in part:

> The school board of any school district may acquire, own, operate, or hire buses for the transportation of students to and from its schools either from within or without the district or for transportation to and from athletic, musical, speech, and other interscholastic contests in which participation is authorized by the school board. If the use of a school bus is granted by the school board pursuant to subdivision (1) or (8) of § 49-28-2 [excluding certain motor vehicles from the definition of motor carriers for the purpose of regulation under the Public Utilities Commission (PUC)], the school district is not liable for suit or damages which may arise as the result of the use.

Section 49-28-2(1) excludes from PUC regulation motor vehicles used for transportation to and from schools or interscholastic activities or when use is rented or granted to nonprofit organizations for transport of persons under 21 for community service. Section 49-28-2(8) exempts motor vehicles used by nonprofit organizations for transportation of senior citizens or handicapped persons.

The school district argued the exemption from liability applied to its use of buses for student transportation. The state supreme court disagreed, holding that the exemption of liability language did not apply to the school district's use of buses to

transport its own students to and from school or interscholastic contests, but instead only to renting or granting use of the buses to nonprofit organizations for their purposes. 449 N.W.2d at 261. The court noted that § 49-28-2(1) limited the area in which a bus can be used under the grant and further required that the organization to which use is granted furnish a fully qualified driver and insurance coverage to and no less than the limits the school district carried for the usual transportation in connection with school activities. Id. The court thus concluded that the effect of § 13-29-1 was "simply to prevent stacking liability coverages where the use of the bus is granted to the nonprofit organizations" and that the "liability aspect" of that section was simply inapplicable to the facts of the case. Id.

The court rejected, without further explanation, the school district's statutory sovereign immunity argument that there are three independent bases for sovereign immunity, with individual statutes such as § 13-29-1 composing the third leg of the triad, that must be specially waived by statute, because it ignored the history of sovereign immunity. Id. at 262 (the other two legs being common law and the state constitution). The court explained that "[t]he immunity language of SDCL 13–29–1 did nothing more than reiterate the common law concept of sovereign immunity embodied in the South Dakota Constitution, art. III, § 27 [,which provides that the legislature shall direct by law in what manner and in what courts suits may be brought against the state]. . . . It does not create the special variety of sovereign immunity urged by [the school district]." Id., citing Celia Miner, Comment, An Analysis of South Dakota's Sovereign Immunity Law: Governmental v. Official Immunity, 28 S.D. L. Rev. 317, 321 (1983) (Comment) (noting case law recognizes "dual common and constitutional law basis" for sovereign immunity); see Kyllo v. Panzer, 535 N.W.2d 896, 898-900 (S.D. 1995) (reviewing history of personal liability of public employees under sovereign immunity scheme). The court then reviewed the history of sovereign immunity as applied to school districts:

For many years, this court held unequivocally that school districts were immune from tort actions because they are state agencies wielding a distributive portion of the sovereign power of the state. . . . After the passage of SDCL 21-32-15 in 1981, it appeared that school districts had waived sovereign immunity if the commissioner of administration purchased liability insurance. But in Holland v. Yankton School Dist. 63-3, 375 N.W.2d 199 (S.D. 1985), a case where school district employees spilled hot soup on a student, we held that school districts were not one of the state agencies that was included in the liability coverage purchased by the commissioner of administration and upheld summary judgment in the case because sovereign immunity had not been waived.

We surmise that the legislature sought to overcome this problem in 1986 by authorizing school districts to waive sovereign immunity under the rubric of "public entities."

SDCL ch. 3-21, enacted as Chapter 4 of the Session Laws of 1986, is entitled "Liability for Public Entities and Public Officials." SDCL 3-21-1(1) defines public entities. . . . [as] the state of South Dakota, all its branches and agencies, boards and commissions. . . . [and] also includes all public entities established by law exercising any part of the sovereign power of the state, including, but not limited to municipalities, counties, school districts . . . .

Id. (the public entity definition is now in S.D. Codified Laws § 3-22-2(12) (Michie Supp. 1997)). The court held the school district, a public entity, had purchased liability insurance and so had waived its sovereign immunity to the limit of its insurance coverage. Id.

The present case is similar to Brown except that the public entity is a county instead of a school district. The distinction noted in Siefkes between the purchase of insurance by the state or by the county is not relevant in the present case because § 21-32A applies. Here, the county has either participated in a risk sharing pool or

purchased liability insurance coverage.  Appellant's Appendix at 20 (Order for Form 35) (identifying insurance carrier as South Dakota Public Assistance Alliance).  Thus, pursuant to S.D. Codified Laws §§ 21-32A-1, -2, the county waived sovereign immunity, to the extent that coverage is afforded thereunder, and consented to suit in the same manner that any other party may be sued.   See Bland v. Davison County, 566 N.W.2d 452, 461 n.9 (S.D. 1997) (noting county waived sovereign immunity defense by purchasing liability insurance pursuant to § 21-32A-1); id., 507 N.W.2d 80, 82 (S.D. 1993) (Wuest, J., concurring specially) (holding county waived sovereign immunity to extent liability insurance coverage exists).

However, because we agree with the district court that S.D.Codified Laws § 3-21-9 provided defendants with a complete defense to Webb's state negligence claim, we affirm the district court's decision that Webb failed to state a claim for that reason.    Section 3-21-9 provides in part that "[n]o person [or] political subdivision . . . is liable . . . for any injury caused by or resulting from . . . a prisoner to any other prisoner . . . or . . . services or programs administered by or on behalf of the . . . jail."   Although we have found no definitive construction of this particular statute by the South Dakota courts, case law sometimes refers to this defense as "statutory immunity."   See B.W. v. Meade County, 534 N.W.2d 595, 596-97 (S.D. 1995) (holding "statutory immunity" per state statute protected public officials or employees involved in investigation of child abuse from negligence liability); see also Martinez v. California, 444 U.S. 277, 281-82 (1980) (holding state statute which granted "absolute immunity" from liability for any injury resulting from parole release decisions and thus provided public employees with complete defense to state tort claim was not unconstitutional unless wholly arbitrary or irrational); Davis v. Fulton County, 90 F.3d 1346, 1354 (8th Cir. 1996) (holding "statutory immunity" per state statute protected sheriff's department employees from tort liability for claims of negligence brought against them in their official or individual capacity).

"Statutory immunity" is related to sovereign immunity or at least to the concept of "official" immunity. <u>See</u> Comment, 28 S.D. L. Rev. at 318, 324-33 (distinguishing sovereign immunity meaning "governmental" immunity of state and political subdivisions from "official" immunity afforded public employees sued in representative capacity or for discretionary acts). The terms are confusing. Nonetheless, we do not think the South Dakota Supreme Court would hold that the application of "statutory immunity" in the present case is necessarily inconsistent with <u>Brown</u>'s rejection of "the special variety of [statutory] sovereign immunity urged by [the school district]" in that case.

First, unlike <u>Brown</u>, the present case does not involve potentially overlapping insurance coverage. Next, because the court in <u>Brown</u> construed the statute to preclude any possible stacking of liability coverage and concluded that the "liability aspect" of the statute was inapplicable, it did not have to construe the "liability aspect" of the statute. 449 N.W.2d at 261 (§ 13-29-1 provided that "[i]f the use of a school bus is granted by the school board pursuant to subdivision (1) or (8) of § 49-28-2 [excluding certain motor vehicles from the definition of motor carriers for the purpose of regulation under the Public Utilities Commission (PUC)], the school district is not liable for suit or damages which may arise as the result of the use"). It is precisely the "liability aspect" of the statute that is at issue in the present case, that is, whether the statute grants immunity from civil liability or provides a complete defense. Even though § 3-21-9 refers to liability (no person is liable for any injury) and § 26-8A-14 expressly refers to immunity (any person is immune from any liability), we think the result is the same-- § 3-21-9 provides defendants with a complete defense as a matter of law. <u>See Martinez v. California</u>, 444 U.S. at 280-82 (similar liability language was held to provide a complete defense to state tort claims).

Finally, construing § 3-21-9 to provide a complete defense to liability for negligence in making jail cell assignments does not conflict with recent South Dakota "official" immunity cases. <u>See, e.g., Kyllo v. Panzer</u>, 535 N.W.2d at 901-03 (holding

§§ 21-32-17, 21-32A-2 unconstitutional in violation of open courts provision so far as they extend sovereign immunity to state employees performing ministerial as opposed to discretionary functions; two cases involved ministerial act of operation of motor vehicles by state employees); Ritter v. Johnson, 465 N.W.2d at 198-99 (case involved ministerial act of state employee's ordering truck driver to weigh station); cf. Dykstra v. United States Bureau of Prisons, No. 97-3410, 1998 WL 154458, at *2 (8th Cir. Apr. 6, 1998) (noting discretionary function exception to waiver of sovereign immunity under the Federal Tort Claims Act). "State employees are cloaked in sovereign immunity when performing discretionary acts because 'such discretionary acts participate in the state's sovereign policy-making power.'" Kyllo v. Panzer, 535 N.W.2d at 902, citing Ritter v. Johnson, 465 N.W.2d at 198. Immunity is critical to the state's evident public policy of allowing those in charge of jails to make discretionary decisions about prison administration without fear of tort liability. See Martinez v. California, 444 U.S. at 283 n.6 (noting stated purpose of immunity statute is to allow parole officials to make determinations of release or parole unfettered by any fear of tort liability); B.W. v. Meade County, 534 N.W.2d at 597 (noting immunity is critical to state's public policy of protecting reporting and investigation of child abuse without fear of reprisal). Webb does not claim that defendants acted intentionally, were not acting within the scope of their authority or performing county functions, or were performing merely ministerial acts.

We agree with the district court that the statutory immunity defense applies only to defeat a tort claim arising under state law.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.