_____

No. 95-3289
_____

George Goff,                        *
                                    *
          Appellee,                 *
                                    *   Appeal from the United States
     v.                             *   District Court for the
                                    *   Southern District of Iowa.
James R. Burton, John Henry,        *
Crispus Nix,                        *
                                    *
          Appellants.               *
_____

          Submitted:  April 10, 1996

              Filed:  August 8, 1996
_____

Before WOLLMAN, JOHN R. GIBSON, and HANSEN, Circuit Judges.
_____


WOLLMAN, Circuit Judge.


     Defendant prison officials (the defendants) appeal the district court's[1] judgment in favor of George Goff in his 42 U.S.C. § 1983 retaliatory discipline and transfer action.  We affirm.


## I.  Background


     In the fall of 1989, Goff was incarcerated at the John Bennett Correctional Center (the correctional center), a medium security facility outside the walls of the Iowa State Penitentiary (the penitentiary) at Fort Madison, Iowa.  On November 29, 1989, Goff informed Unit Manager Marty Rung that he and other inmates intended to file suit against the correctional center to contest overcrowded conditions.  According to Goff, prison officials forbade him from

_____

[1]The Honorable Donald E. O'Brien, United States District Judge for the Southern District of Iowa.

preparing for the suit and ordered him not to discuss or research the case with anyone. Despite this advice, Goff and several other inmates continued their preparation and filed suit on January 16, 1990.

On January 15, 1990, Kevin Smith, an inmate at the correctional center, was transferred to the medical unit at the penitentiary for treatment of an injury that he reported had occurred from falling off the "dock" outside the kitchen area at the correctional center. Lieutenant Donald Vail, the prison official on duty at the time, reported the injury and escorted Smith to the medical unit. Captain James Burton, head of the investigations unit at the penitentiary, filed a report identifying the injury as minor.

At some point after Smith's reported injury, prison officials began to investigate the possibility that Smith's injury was not caused by a fall. According to Lieutenant Vail, this change in positions occurred after a confidential informant approached him on the evening of the accident and claimed that he had heard from a third inmate that the inmate had witnessed Goff hit Smith. No prison official ever met with this third inmate, however, who was the only alleged witness to the encounter.

On January 17, Captain Burton questioned Smith regarding the cause of his injury. Smith, responding affirmatively to Burton's leading questions, identified an inmate named "George" as the source of his injuries. Following this interview, an unidentified officer, deviating from standard prison policy, showed Smith one picture, that of Goff, and Smith allegedly identified Goff as his attacker.

On January 19 prison officials were served with notice of Goff's civil lawsuit against the correctional center. Goff had been scheduled for transfer from the correctional center to a

minimum security "farm" on January 24, 1990, and then for eventual work release. This scheduled transfer never occurred. Instead, on January 23, 1990, Goff was brought to Burton's office for an interview. According to prison officials, Goff was transferred to the penitentiary because he refused to speak to Burton. Goff testified at trial that he refused to talk to Burton only because he was not informed of the nature of the interview.

Formal charges were filed against Goff on February 7, 1990, for the alleged assault on Smith. He was found guilty as charged and received 15 days' isolation, a year in lockup, and loss of one year's good-time credit. Goff then filed this suit against Burton, Warden Crispus Nix, and Deputy Warden John Henry, alleging that he was innocent of the assault and that he was transferred and disciplined in retaliation for his legal activities against the prison.

At trial Goff presented evidence both of his innocence of the charged assault and concerning the suspicious timing and irregular procedures followed in the investigation against him. Direct evidence of Goff's innocence was offered through the testimony of fellow inmates Dudie Rose and Kevin Blaykey. Both inmates testified that they were with Goff in the cafeteria at the time of the alleged assault and that they did not witness any contact between Goff and Smith, much less an assault.

Smith did not testify at trial. At his January 17 interview, however, he stated that both Blaykey and an inmate fitting Rose's description were with Goff at the time of the assault. Prison officials never attempted to ascertain the identity of or to interview Rose. Blaykey testified that he was brought back into the penitentiary for questioning on February 5. At that interview Burton informed him that prison officials knew that Goff had assaulted Smith. Blaykey testified that Burton then promised him that if Blaykey told them what he knew he would be sent back to the

-3-

correctional center.  Blaykey testified that because he knew nothing of an assault he could provide the prison officials with no information.  Despite his failure to cooperate, Blaykey was classified to return to the correctional center approximately thirty days after he was brought in.  He chose not to go, however, stating that he "didn't want to go out there and keep coming back in here for stupid stuff."

Goff presented testimony concerning several apparent procedural irregularities in the investigation that led to his ultimate discipline.  First, although Smith's injuries occurred on January 15 and he allegedly implicated Goff two days later, Goff was not questioned concerning the Smith incident until January 23.  This delay was contrary to prison policies requiring swift action in response to an alleged assault.  Moreover, at the time of his transfer Goff was not informed that he was a suspect in the alleged assault, and the prison transfer memo did not mention the assault.  Following his transfer, Goff spent several weeks in the penitentiary before he was actually charged with the assault.

Finally, Goff presented some direct evidence of prison retaliation in the form of inmate Russell Buckley's testimony.  Buckley testified to a conversation with Correctional Officer Hawk, during which Officer Hawk informed him that the reason for Goff's transfer to the penitentiary was Goff's legal work against the prison.

The district court found in Goff's favor, ordered his transfer back to the correctional center, and awarded him $2,250 in damages and credit against future discipline for 225 days served in lockup.  On appeal we reversed, finding that the district court had failed to apply the "but for" standard in determining whether Goff's transfer was retaliatory and had failed to apply the "some evidence" standard in determining whether the disciplinary action taken against Goff was retaliatory.  Goff v. Burton, 7 F.3d 734

(8th Cir. 1993), <u>cert.</u> <u>denied</u>, 114 S. Ct. 2684 (1994).  On remand, the district court applied these standards to its previous findings of fact and again found in Goff's favor.

## II.  Retaliatory Transfer

"Although a prisoner enjoys no constitutional right to remain at a particular institution, and although generally prison officials may transfer a prisoner for whatever reason or no reason at all, a prisoner cannot be transferred in retaliation for the exercise of a constitutional right."  <u>Goff</u>, 7 F.3d at 737 (internal quotations and citations omitted). To prevail on his section 1983 retaliatory transfer claim, Goff must prove that a desire to retaliate was the actual motivating factor behind the transfer.  <u>Id.</u>  In other words, Goff must prove that but for his legal actions against the prison, he would not have been transferred to the penitentiary.  <u>Id.</u>

On remand the district court found "overwhelming" evidence that but for the defendants' improper motive, Goff would not have been transferred. We review this factual finding for clear error.  <u>Cornell v. Woods</u>, 69 F.3d 1383, 1388 (8th Cir. 1995).

The district court noted that the chronology of events surrounding Goff's transfer gave rise to an inference of retaliation.  That inference was then strengthened by evidence that the defendants deviated from their normal procedure of immediately transferring a prisoner suspected of assault, and the transfer memo did not mention the assault.  Indeed, Burton admitted that he had all of the information tending to show Goff's guilt on January 17; yet he did not contact his superiors to determine whether to file charges until February 7.  Burton also admitted that Goff's detention in the penitentiary for several weeks without an investigation was atypical.  Coupled with this is Russell Buckley's testimony that when he asked Officer Hawk why Goff had been

transferred, Hawk responded that Goff was transferred because of his legal work.

Whether we would characterize this evidence as "overwhelming" is not the point. The question is whether the district court's finding that the defendants retaliated against Goff by transferring him to the penitentiary is clearly erroneous, and we conclude that it is not.

### III.   Retaliatory Discipline

The prohibition against transferring an inmate in retaliation for his initiating legal action against the prison is equally applicable to prison officials' decision to discipline an inmate in retaliation for his legal activities. The standard, however, is different. To avoid liability on Goff's retaliatory discipline claim, the defendants must simply prove that there was "some evidence" supporting their decision to discipline Goff, for if the contested discipline was imposed for an actual violation of prison rules, the retaliatory discipline claim must fail. Cornell, 69 F.3d at 1389. On remand the district court concluded that by failing to offer any credible evidence that Goff committed the alleged assault, the defendants failed to satisfy the "some evidence" standard.

The district court noted that the confidential informant's statement lacked sufficient indicia of reliability, as the informant communicated only what somebody else had said that he saw. The court further noted that the suspect nature of this evidence was heightened by the defendants' failure to properly investigate the confidential informant's source of knowledge. We perceive no error in the district court's ruling, for we have repeatedly held that the district court must make a determination of the reliability of a confidential informant to determine whether some evidence exists to support a disciplinary committee's

decision.  See Earnest v. Courtney, 64 F.3d 365, 367 (8th Cir. 1995); Turner v. Caspari, 38 F.3d 388, 393 (8th Cir. 1994); Freitas v. Auger, 837 F.2d 806, 810 (8th Cir. 1988).  "A bald assertion by an unidentified person, without more, cannot constitute some evidence of guilt."  Freitas, 837 F.2d at 810.

The only other evidence offered was the transcript of the defendants' interview with Smith.  In finding this evidence to be unreliable, the district court pointed to the inconsistent nature of Smith's statements, Smith's failure to testify under oath at any time, Smith's failure to testify at the hearing, and the fact that the statements were procured through leading questions and with the promised reward of transfer to a more desirable facility.[2]  Again, we see no error in the district court's ruling, for if "some evidence" is to be distinguished from "no evidence," it must possess at least some minimal probative value if it is to be found adequate to satisfy the requirement of the Due Process Clause that the decisions of prison administrators must have some basis in fact.  See Superintendent v. Hill, 472 U.S. 445, 456 (1985).  As indicated above, the district court did not err in finding that the confidential informant's statement did not meet this minimal threshold of reliability.  Likewise, Smith's statements, although not cloaked in the garb of anonymity, were, as the district court found, rendered so suspect by the manner and circumstances in which given as to fall short of constituting a basis in fact for the defendants' decision to impose discipline upon Goff.

We acknowledge that this latter finding by the district court is subject to the defendants' argument that the district court did not heed the Supreme Court's admonition in Superintendent v. Hill that in ascertaining whether the "some evidence" standard has been

---

[2]Smith was subsequently transferred to another medium security facility.  The parties contest, however, and the record does not disclose, whether this facility was more favorable than the correctional center.

satisfied, courts are not to make an independent assessment of the credibility of witnesses or weigh the evidence. Id. at 455. We conclude, however, that the "some evidence" standard does not so cabin the scope of judicial review as to require that credence be given to that evidence which common sense and experience suggest is incredible. Accordingly, we conclude that the district court did not err in subjecting Smith's statements to this minimal level of review and in finding that the defendants' decision to discipline Goff lacked a basis in fact and was thus retaliatory.

## IV.  Failure to State a Claim

The defendants next contend that Goff's action for damages is barred by the holding in Heck v. Humphrey, 114 S. Ct. 2364 (1994).  The defendants failed to raise this contention below, however, even though Heck  was decided eleven months before the final proceedings in the district court.[3] Accordingly, we will not consider it on appeal.  See Fed. R. Civ. P. 12(h)(2).

## V.  Damages

Finally, the defendants contend that Goff did not establish a claim for damages, and that in any event he is not entitled to the amount awarded.  The district court awarded Goff $2,250 in damages for 225 days spent in segregation as a result of his transfer from the correctional center to the penitentiary.  In making this award, the district court took judicial notice of numerous prison policies concerning the additional restrictions imposed on Goff during his time spent at the penitentiary. We conclude that the district court did not abuse its discretion in valuing Goff's lost privileges at ten dollars per day.  See Stevens v. McHan, 3 F.3d 1204 (8th Cir. 1993) (identifying standard of review and citing

---

[3]Heck was decided on June 24, 1994.  The last hearing before the district court occurred on May 31, 1995.

-8-

cases suggesting an appropriate damage range for lockup time is between $25 and $129 per day).

The judgment is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.