# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2707

_____

Howard Dean Rouse,                    *

                                  *

     Plaintiff - Appellant,       *

                                  *  Appeal from the United States

     v.                            *  District Court for the

                                  *  District of Minnesota.

Dennis L. Benson; David Crist;     *

Steve C. Hokonson; Timothy Lanz,  *

                                  *

     Defendants - Appellees.     *

_____

Submitted:  May 14, 1999

Filed:   October 12, 1999

_____

Before RICHARD S. ARNOLD, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

     Howard Dean Rouse appeals from an adverse summary judgment entered on his claims for retaliatory transfer from a Minnesota to an Iowa prison in violation of 42 U.S.C. § 1983 (1994); discrimination against him for challenging practices regarding American Indian cultural and religious activities in violation of the equal protection clause of the 14th Amendment and 42 U.S.C. § 1981 (1994); and conspiracy to so discriminate in violation of 42 U.S.C. §§ 1985(3) and 1986 (1994). He also argues that the district court erred in dismissing his claims for emotional injury under the Prison

Litigation Reform Act, 42 U.S.C. § 1997e (1994). We reverse the judgment of the district court on the retaliatory transfer claim and remand for further proceedings.

Rouse was convicted of second-degree murder in Iowa and incarcerated there. He requested a transfer to Minnesota hoping for a greater opportunity to practice his Native American religion, specifically, the practices of the Lakota. Under the Interstate Corrections Compact, he was transferred to the Minnesota Correctional Facility in Stillwater on March 31, 1993.

While incarcerated at Stillwater, Rouse complained about various religious restrictions. He filed numerous grievances, or "kites," with Chaplain Steven C. Hokonson, the prison's Religious Services Coordinator. Because some complaints were incomprehensible, Hokonson personally visited with Rouse about them. These complaints regarded such matters as the pass system, which at times prevented inmates from attending the sweat lodge and at times forced their attendance; the fact that the sweat lodge faced east rather than west as his Lakota religion demanded; and requests for certain items of religious significance. Rouse also ghostwrote grievances for other inmates on religious matters. The prison discourages such ghostwriting, because it fosters obligations that encourage the illegal exchange of cash, contraband, or other services, and because it threatens prison security in the event an inmate is dissatisfied with a hired inmate's work product.

In the fall of 1994, Rouse indicated he was generally dissatisfied with his placement at Stillwater. In response, Timothy Lanz, Rouse's unit director and the transfer coordinator at the prison, requested Rouse's transfer back to Iowa. While the transfer request was being processed, however, Stillwater prison authorities became aware that Rouse had been involved in an inmate drug smuggling and money laundering conspiracy. In return for immunity from prosecution, Rouse agreed to be a material witness in any state or federal prosecution of the other participants. Accordingly, in a memorandum dated January 27, 1995, Lanz withdrew the request for transfer to Iowa

-2-

and stated that he would like to keep Rouse in Minnesota for the indefinite future so he would be available for the conspiracy prosecution.

After a brief period following the withdrawal of the request on January 27, Lanz again requested Rouse's transfer back to Iowa and asked that Iowa authorities be contacted. In a memorandum dated September 26, 1995, Lanz pointed to Rouse's recent efforts to encourage other Native American inmates to file a parade of grievances regarding restrictions on their cultural and religious activities. He also stated that too much staff time had been spent answering those complaints. Rouse was transferred to the Iowa Department of Corrections on October 27, 1995. Warden Dennis L. Benson's only involvement in the transfer was to sign the paperwork, and while Hokonson gave information to Lanz regarding Rouse's activities, he did not participate directly in the transfer decision.

At the request of Associate Warden David Crist, Lanz prepared a post-transfer memo dated November 7, 1995, which commented further on the circumstances of Rouse's transfer. Lanz explained that the staff had become aware that, as a leader of the American Indian Folklore Group, Rouse was acting as a behind-the-scenes agitator, encouraging other inmates to file grievances against a wide variety of institutional practices which caused staff to spend an excessive amount of time investigating and developing responses. Lanz also wrote of the staff's concern with a perceived rise in assaultive behavior by and among Native American inmates since Rouse assumed his leadership role. And finally, Lanz stated that Rouse had become involved in a drug smuggling/money laundering conspiracy among Stillwater inmates, and only avoided criminal charges by cooperating with state and federal authorities. In a signed affidavit Lanz further asserts that Rouse encouraged other inmates to engage in unauthorized gatherings in the cell hall. Whether these gatherings related to Native American spiritual practices or whether they were simply social, security reasons prohibit inmates from congregating in the cell halls.

Lanz has continued to maintain that although Rouse claims to have drafted the initial complaint in an action brought by other inmates against prison officials entitled Chambers, et al. v. Wood, Lanz was not aware of this lawsuit at the time the September 26, 1995 transfer decision was made.

Rouse brought this action alleging retaliatory transfer because of his exercise of rights under the First Amendment by submitting grievances and participating in legal action challenging the denial of his religious freedom. He alleged that, while at Stillwater prison, he had played a leadership role with the Native American inmates, made numerous written and oral grievances to prison administrators, and assisted other inmates in preparing grievances. These grievances were directed at policies and practices that prevented the Native American inmates from properly practicing their religion. He has alleged that his transfer was in retaliation for his exercise of First Amendment rights in violation of 42 U.S.C. § 1983, that such treatment also violated his right to equal protection pursuant to § 1983, and that such treatment was motivated by unlawful racial bias and racial discrimination in violation of 42 U.S.C. § 1981. In addition, he alleged a conspiracy to deprive him of spiritual freedom, freedom of speech, the equal protection of the laws, and equal privileges and immunities under the laws in violation of 42 U.S.C. §§ 1985(3) and 1986. Rouse prayed for injunctive relief and money damages.

The Stillwater officials moved for summary judgment, and the motion was referred to a magistrate judge for a report and recommendation. The magistrate judge recommended denial of the motion for summary judgment on Eleventh Amendment grounds, but stated that the actions of the defendant prison officials could only subject the state to prospective injunctive relief. The magistrate judge further held that, viewing the evidence most favorably to Rouse, reasonable minds could agree that the Lanz memoranda demonstrated that the motivation for the transfer was to prevent Rouse from exercising protected rights. He therefore recommended denial of summary judgment on all claims, but recommended dismissal of any claim for mental or

emotional injury because Rouse did not allege physical injury as required by 42 U.S.C. § 1997e(e). The judge also recommended denial of Hokonson's motion to dismiss based upon lack of personal involvement, and denial of summary judgment as to Lanz's and Benson's claim of qualified immunity because of Rouse's clearly established constitutional right not to be transferred as punishment for exercising other constitutional rights.

The district court considered the report and recommendation of the magistrate judge in detail. It observed that a prisoner does not have a constitutional right to remain in a particular institution and may be transferred for any reason or no reason. It rejected Rouse's argument that the reasons for transfer set forth in Lanz's November 7, 1995 memo were post hoc explanations and concluded that there were rational penological reasons for the transfer. The court therefore rejected the retaliatory transfer and equal protection claims, as well as all claims for relief under sections 1981, 1983, 1985, and 1986.

## I.

We review a grant of summary judgment de novo. Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998). The movant must show that the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Webb, 144 F.3d at 1134; Fed.R.Civ.P. 56(c). Once the moving party has made this showing, the non-moving party must go beyond the pleadings and by affidavits, depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of material fact. Fed.R.Civ.P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553 (1986); Webb, 144 F.3d at 1135. "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 265 (1986); Webb, 144 F.3d at 1135.

## II.

Rouse contends that he was transferred from Stillwater prison in Minnesota to the Iowa prison system in violation of his First Amendment rights of free speech and free exercise of religion. Viewing the evidence in the light most favorable to him, we hold that there is sufficient evidence for a reasonable jury to find that he was a victim of retaliatory transfer in violation of 42 U.S.C. § 1983.

In general, a prisoner enjoys no constitutionally protected right against transfer to another prison. Goff v. Burton, 91 F.3d 1188, 1191 (8th Cir. 1996). And "[j]ust as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State." Olim v. Wakinekona, 461 U.S. 238, 245, 103 S.Ct. 1741, 1745, 75 L.Ed.2d 813 (1983). Prison authorities have a great deal of discretion in running their institutions, and such discretion normally outweighs any interest that any individual prisoner may have in remaining housed in a particular prison. Sanders v. St. Louis County, 724 F.2d 665, 668 (8th Cir. 1983). Nevertheless, a prisoner cannot be transferred in retaliation for his exercise of constitutionally protected rights, Goff, 91 F.3d at 1191, either between prisons in a single state, or between state and federal prison systems under the Interstate Corrections Compact. Sisneros v. Nix, 95 F.3d 749, 751 (8th Cir. 1996).

To successfully argue retaliatory transfer in violation of his constitutional rights pursuant to § 1983, Rouse "must prove that a desire to retaliate was the actual motivating factor behind the transfer." Goff, 91 F.3d at 1191. In other words, Rouse must prove that but for his protected First Amendment activity, he would not have been transferred. Id. On this appeal, however, we need only decide whether, viewing the

evidence in the light most favorable to Rouse, a reasonable jury could find that the "but for" test is satisfied on the facts of this case.

In Goff, we upheld the district court's entry of judgment in favor of the plaintiff on his retaliatory transfer claim. Goff claimed he was transferred to the Iowa State Penitentiary for filing a suit in the facility where he was originally incarcerated to contest overcrowded conditions. Id. at 1189-90. In upholding the district court's judgment, we pointed to the suspicious circumstances surrounding the transfer decision. Id. at 1191. Although Goff was initially told he was being transferred for assaulting another inmate, prison officials deviated from their established procedure of immediately transferring a prisoner suspected of assault. Id. Additionally, the transfer memo failed to even mention the alleged assault. Id. Applying Goff, we conclude that the events surrounding Rouse's transfer were such that a reasonable jury could find his transfer to be improper.

Certainly, Rouse was not a model prisoner during the time he was housed at Stillwater prison. Lanz, in his second affidavit of December 19, 1997, and in his November 7, 1995 memorandum to Karen Robinson, Assistant to the Warden, stated he had information that: (1) Rouse was involved in a drug smuggling and money laundering scheme; (2) Rouse's leadership role among the Native American prison population led to a rise in coercive and assaultive behavior by that group collectively; (3) Rouse continued to challenge prison rules by initiating or orchestrating unauthorized gatherings in the cell hall; and (4) Rouse filed repetitive and frivolous grievances which consumed an inordinate amount of staff resources. The first three reasons appear to be legitimate reasons for transferring Rouse back to Iowa. However, a reasonable jury could find those rationales to be merely pretextual, post hoc explanations for that transfer. We will discuss the propriety of the fourth reason next in conjunction with a close examination of Lanz's September 26, 1995 memorandum which first set forth the reasons for Rouse's transfer back to Iowa.

We believe that the contents of Lanz's September 26, 1995 memorandum requesting Rouse's transfer from Stillwater compel a denial of summary judgment for defendants on Rouse's retaliatory transfer claim. As the first document setting forth the reasons for Rouse's transfer, it is most probative of the true reasons for Rouse's transfer. In that memorandum, Lanz stated:

> [Rouse] has proven to be a continuing disruptive influence through his activities agitating American Indian inmates to file a continuing litany of challenges to our practices regarding American Indian cultural activities and American Indian religious activities. As a result, a disproportionate amount of staff time has been spent answering these complaints and court challenges.

A reasonable jury could find that the reasons for Rouse's transfer are contained in these two sentences, and that all other rationales given by prison officials were merely post hoc responses to anticipated challenges to the transfer. Assuming a reasonable jury could so find, we must ask a further question: Could a reasonable jury also find that the reasons set forth in Lanz's September memorandum are improper, and that Rouse was transferred in retaliation for his exercise of constitutional rights? We answer both parts of this question in the affirmative.

In his September memorandum, Lanz supports the decision to transfer Rouse by stating that Rouse had convinced other inmates to file grievances regarding their ability to actively practice their Native American religion and that prison staff was required to spend an inordinate amount of time responding. If this was the true motivating force behind Rouse's transfer, it would be a proper rationale, as inmates do not have a constitutional right to incite other inmates to file grievances or to assist other inmates in filing lawsuits. Williams v. Nix, 1 F.3d 712, 716 (8th Cir. 1993) (stating that "an individual inmate does not have a constitutional right to 'practice' jailhouse law"); Nickens v. White, 622 F.2d 967 (8th Cir. 1980) (prison officials justified in prohibiting circulation of a petition in spite of restrictions on inmate's right to freedom of

-8-

expression, based on reasonable security concerns). Even though Rouse admits in his affidavit that he drafted such complaints for other inmates, a reasonable jury could find that he was not transferred for that reason. Defendants have presented this court with only one religiously motivated grievance bearing the name of an inmate other than Rouse that was filed prior to Lanz's September memorandum. That grievance, allegedly ghostwritten by Rouse, was signed by inmate Gordon Brooks and filed on August 24, 1995. With this sparsity of religiously motivated grievances filed by other inmates, a reasonable jury could find that Rouse was not transferred for encouraging such filings. Whether Rouse drafted the Chambers complaint appears to be irrelevant, as all defendants but Crist have admitted in signed affidavits that they knew nothing of that lawsuit at the time of Rouse's transfer.

Therefore, a reasonable jury could infer that Rouse was actually transferred in retaliation for his own religiously motivated grievances. And while an inmate may be transferred for filing frivolous or repetitive grievances, Sterling v. Wood, 68 F.3d 1124 (8th Cir. 1995) (there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious), a reasonable jury could further find that Rouse's grievances were neither frivolous nor repetitive, and that Rouse was actually transferred in retaliation for his attempts to exercise his First Amendment right to practice his Lakota religion. Defendants compare Rouse to the plaintiff in Ward v. Dyke, 58 F.3d 271 (6th Cir. 1995), cert. denied, 516 U.S. 991, 116 S.Ct. 524, 133 L.Ed.2d 431 (1995), claiming that Rouse was a discontented inmate who placed an unreasonable strain on prison staff through his high volume of complaints. However, unlike the plaintiff in Ward, who filed a total of 115 grievances over a period of slightly less than four months, Lanz estimated in his deposition that Rouse's grievances could have been as infrequent as one every two to four weeks, and that responding to Rouse's grievances never prevented him from leaving work on time.

In sum, we hold that a reasonable jury could find that Rouse was transferred in retaliation for his exercise of his religion and that such transfer would not have occurred otherwise. We consequently remand the retaliatory transfer claim for trial.

## III.

Rouse next appeals the district court's adverse summary judgment on his § 1983 claim that he was denied equal protection of the laws as a result of his transfer to Iowa. He claims that he was singled out as a follower of the Lakota religion, and transferred for his efforts to practice that religion. The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This mandate has been interpreted to require the government "to treat similarly situated people alike," City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985), and it extends to prison inmates. Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). However, in prison cases, courts will ordinarily defer to the expert judgment of prison authorities, due to the difficulty of running a prison and the commitment of the task to the responsibility of the legislative and executive branches. Turner, 482 U.S. at 84-85, 107 S.Ct. at 2259; see also Thomas v. Gunter, 32 F.3d 1258, 1259 (8th Cir. 1994) (quoting Pell v. Procunier, 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974)). Nevertheless, prison officials may restrict the religious practices of inmates only if such deprivation is necessary to further legitimate penological interests. Thomas, 32 F.3d at 1259 (citing Turner, 482 U.S. at 89, 107 S.Ct. at 2261).

Even viewing the evidence in the light most favorable to Rouse, a reasonable jury could not find that his transfer back to Iowa violated his equal protection rights pursuant to § 1983, so we uphold the district court's ruling on this count.

-10-

Our analysis begins by asking whether Rouse has shown that he has been treated differently than others similarly situated. Klinger v. Dep't of Corrections, 31 F.3d 727, 731 (8th Cir. 1994), cert. denied, 513 U.S. 1185, 115 S.Ct. 1177, 130 L.Ed.2d 1130 (1995). In Klinger, plaintiff class, inmates of the one Nebraska prison to house only women, claimed that the Nebraska Department of Correctional Services violated their equal protection rights by providing male inmates with better programs and services. Id. at 729. Plaintiffs were challenging only the allocation of resources, not the adequacy of funding. Id. at 731. We held that the relevant men's prison was not similarly situated to the women's prison, so the equal protection claim failed. Id. at 731. Differences between the two prisons included the following: (1) the men's prison housed about six times as many inmates as the plaintiffs' prison; (2) the average length of inmate stay at the men's prison was three times as long as at the plaintiffs' prison; and (3) the plaintiffs' prison was a more secure facility than the men's prison. Id. We concluded that the prisons were "different institutions with different inmates each operating with limited resources to fulfill different specific needs." Id. at 732. Therefore, the inmates at the two prisons were not similarly situated for purposes of equal protection analysis.

Rouse's equal protection claim contains a fatal flaw much more elemental than that existing in Klinger. Namely, Rouse has failed to present evidence from which we can discern the contours of the class to which he would claim to be similarly situated. We have found only ambiguous allegations by Rouse in inmate kites wherein he claimed he was being denied the opportunity to adequately practice his Lakota religion. However, Rouse has not presented this court with any evidence showing that other inmates following other religions have not been similarly limited, in the interest of legitimate penological goals such as prison security. See Aziz v. Groose, 74 F.3d 1243 (8th Cir. 1996) (unpublished per curiam) (text in WESTLAW at 1996 WL 11091) (summary judgment properly granted against prisoner's equal protection claim, because restrictions on religious practice applied to followers of all religions). Therefore,

Rouse's equal protection claim fails, and the district court's entry of summary judgment against him was proper.

## IV.

We also uphold the district court's summary judgment against Rouse on his claim under 42 U.S.C. §1981. That statute states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.

42 U.S.C. § 1981(a). Because Rouse has presented no evidence tending to show that he was discriminated against on the basis of race, his § 1981 claim was properly disposed of by the district court. Runyon v. McCrary, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); Occhino v. Northwestern Bell Tel. Co., 675 F.2d 220 (8th Cir. 1982), cert. denied, 457 U.S. 1139, 102 S.Ct. 2971, 73 L.Ed.2d 1358 (1982).

## V.

With regard to Rouse's claims under 42 U.S.C. §§ 1985(3) and 1986, there is no evidence in the record to support a finding of a meeting of the minds of the alleged conspirators. The magistrate's finding of such evidence cannot be substantiated by the record on appeal. Rouse has therefore failed to meet his burden to "allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." City of Omaha Employees Betterment Ass'n v. Omaha, 883 F.2d 650, 652 (8th Cir. 1989). For these reasons, we affirm the district court's grant of summary judgment as to Rouse's claims under §§ 1985(3) and 1986.

## VI.

Since the district court has yet to rule on the applicability of the Prison Litigation Reform Act to the facts of this case, any determination on that issue by this court at this time would be premature. We therefore refrain from such analysis.

## VII.

Should Rouse be successful on any of the remanded claims, he must still contend with the state's Eleventh Amendment immunity and the possible qualified immunity of the defendants in regard to claims brought against them in their individual capacities. The Eleventh Amendment issue was not briefed by the parties, and the district court has not yet ruled on defendants' qualified immunity, so we need not decide these issues at this time.

## VIII.

For the foregoing reasons, we reverse the district court's grant of summary judgment against Rouse on his retaliatory transfer claim and remand for trial.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.