Timothy L. JUNKER, Plaintiff,

v.

AMANA COMPANY, L.P., a/k/a Amana Refrigeration, Defendant.

No. C01–91.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

Jan. 8, 2003.

 

Larry J. Thorson, Ackley Kopecky & Kingery, LLP, Cedar Rapids, IA, for plaintiff.

Iris E. Muchmore, Leonard T. Strand, Simmons Perrine Albright Ellwood, Cedar Rapids, IA, for defendant.

## OPINION AND ORDER

READE, District Judge.

## I. INTRODUCTION

This matter is before the Court on Defendant's motion for summary judgment (docket no. 11). Plaintiff filed his complaint in Iowa District Court for Benton County on June 13, 2001 alleging Defendant breached an implied employment contract by terminating Plaintiff and that Defendant violated the Family and Medical Leave Act by denying Plaintiff leave and terminating Plaintiff's employment. Defendant removed the action from Iowa District Court for Benton County to this Court on June 28, 2001. Defendant has moved for summary judgment on Plaintiff's breach of contract claim (Count II) and on Plaintiff's Family and Medical Leave Act claim (Count III).[1] Plaintiff resisted Defendant's motion on July 20, 2002 (docket no. 16) and Defendant replied to Plaintiff's resistance on August 7, 2002 (docket no. 23). The Court held a telephonic hearing on Defendant's motion on December 20, 2002. For the reasons set forth below, the Court grants Defendant's motion on both of Plaintiff's claims.

## II. FACTUAL BACKGROUND

The Court views the following facts in the light most favorable to Plaintiff, the nonmoving party. Plaintiff was a bargaining unit employee of Defendant. On October 22, 2000, Plaintiff was injured in a non-work related automobile accident. Plaintiff was in the hospital being treated for his injuries until October 23, 2000. On October 24, 2000, Plaintiff had his mother drive him to Defendant's facility to fill out medical leave forms because he was unable to return to work due to his injuries. At this time, Plaintiff met with two individuals in Defendant's human resources department, Dennis Meyer and Sharon Gross. Plaintiff filled out and signed a form entitled "Application for Medical Leave," (the "Application") which stated, in pertinent part, the following:

> This form is required only when the absence is going to be over five (5) workdays and the disability is due to a non-work related injury or illness. . . . Employees applying for a leave of absence must complete and return this form to the Personnel Department for authorization as soon as possible, but in no case shall it be later than the **SIXTH (6th) DAY** of absence. A Certificate of Disability must also be completed by a licensed physician and returned to the Personnel Office as soon as possible, but in no case shall it be later than the sixth (6th) day of absence. **YOU** are responsible for returning the Certificate of Disability; do not rely on your physician to return it for you. **FAILURE TO RETURN THIS FORM AND THE CERTIFICATE OF DISABILITY WILL**

---

1. Count I of the Petition at Law is labeled "Facts" and does not appear to state a cause of action.

RESULT IN *AUTOMATIC TERMI-NATION.* Once your leave of absence has been authorized, you will be provided with a duplicate copy of this form. *EXPIRATION OF LEAVE.* You *will not* be reminded by the Company of the date your leave will expire. **FAILURE TO RETURN ON THE FIRST DAY FOLLOWING THE EXPIRATION DATE,** or to provide necessary doctor's certificate for the extension of leave (where allowable) on or before the expiration date, **WILL RESULT IN** *AUTOMATIC SEPARATION* **FROM THE PAYROLL**....

Def.App. 83 (emphasis in original).

During this meeting, either Mr. Meyer or Ms. Gross explained to Plaintiff that Defendant would not remind Plaintiff of the date on which his leave would expire. Mr. Meyer or Ms. Gross further explained that Defendant would terminate Plaintiff's employment if he failed to either return to work upon the expiration of his leave or to submit a new medical certification to extend his leave prior to the expiration of his initial leave period. Ms. Gross gave Plaintiff her fax number and indicated that it was acceptable for Plaintiff or Plaintiff's physician to communicate with Defendant by fax. Plaintiff left the meeting with an understanding that Defendant's policy, as set forth in the Application, required that he submit to Defendant medical documentation to support his request for leave. Plaintiff further understood that it was his responsibility to provide to Defendant another physician's certification if he could

not return to work at the end of his initial leave period. Defendant's policy with respect to the Application was to review the completed Application together with the medical certification once Defendant received it, and to then notify the requesting employee of the length of leave Defendant granted.

Plaintiff's physician subsequently faxed to Defendant a medical certification which indicated that Plaintiff's injuries required that he be granted leave beginning on October 22, 2000 and lasting for an "indeterminate" period of time. The medical certification also indicated that Plaintiff's next appointment with the physician was November 2, 2000.

Defendant reviewed Plaintiff's medical certification and approved an initial medical leave for Plaintiff that expired on November 23, 2000. Defendant sent to Plaintiff via certified mail documents pertaining to his leave, including a copy of the Application he had filled out during his meeting with Mr. Meyer and Ms. Gross. This copy of the Application indicated at the bottom that Plaintiff's initial leave expired on November 23, 2000. Plaintiff acknowledged that he received the document and that he knew at this time that, if his leave were to extend beyond November 23, 2000, he would need to inform Defendant of his need for an extension prior to that date.[2]

Plaintiff saw his treating physician again on November 7, 2000 and received a medical certification that established a return to work date of December 4, 2000. The

2. Plaintiff's testimony on the issue of whether he knew when his leave expired is somewhat confusing. He testified on page 31 of his deposition that he received the completed Application from Defendant and knew that Defendant had given him leave through November 23, 2000. On pages 40–41, Plaintiff testified that he was unsure if he realized his leave expired on November 23, 2000 because he and his wife read the leave forms they had received from Defendant but "kind of got them and glanced over to make sure that we actually had the leave but we didn't look to see exactly what the date was." Nevertheless, the Court finds that Plaintiff received from Defendant leave forms indicating that his leave expired on November 23, 2000 and therefore, at the very least, he should have known that his leave expired on this date.

office nurse, Nurse Joan Colston, testified that it was office practice to give each patient two copies of his or her medical certification—one copy for the patient and one copy for the patient to provide to his or her employer. Nurse Colston further testified that she gave to Plaintiff two copies of his medical certification. Plaintiff is unsure whether he actually received such copies from Nurse Colston. Plaintiff did, however, ask that Nurse Colston fax a copy of the certification to Defendant at this time. Plaintiff's wife called Nurse Colston on November 13, 2000 to ensure that she had faxed a copy of the certification to Defendant. She also asked Nurse Colston to confirm that the fax number to which she was faxing documents was in fact Defendant's fax number. On November 15, 2000, either Plaintiff or his wife called Nurse Colston to request that she fax a copy of the medical certification to Bob Zlasnik, who was an employee of Jefferson Pilot, Defendant's short term disability insurance carrier, so that Plaintiff could receive disability benefits.

Defendant terminated Plaintiff's employment on November 30, 2000 because Plaintiff had failed to return to work upon expiration of his initial leave period and had failed to notify Defendant that he needed to extend his leave. Prior to making the decision to terminate Plaintiff, Mr. Meyer asked various individuals in Defendant's human resources department whether they had received any documentation or communication from Plaintiff requesting an extension of his leave. None of these individuals reported receiving any communication from Plaintiff.

On December 4, 2000, Plaintiff's wife called Nurse Colston and informed her that Defendant had terminated Plaintiff's employment and requested that Nurse Colston fax to Defendant on that day the medical certification indicating a return to work date for Plaintiff of December 4, 2000. Defendant received this fax but, at this point, it already had terminated Plaintiff's employment. Plaintiff admits that neither he nor his wife ever contacted Defendant to ensure that it had received the documentation regarding an extension of Plaintiff's leave. Plaintiff instead relied on Nurse Colston's representations that she had faxed the medical certification to Defendant.

On December 4, 2000, Plaintiff submitted to his Union representative a grievance concerning the termination of his employment in accordance with the terms of the Collective Bargaining Agreement between Defendant and Plaintiff's Union. Plaintiff's Union was the exclusive collective bargaining representative for Defendant's bargaining unit employees. The Union did not pursue Plaintiff's grievance.

### III. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate only when the record, viewed in the light most favorable to the nonmoving party, shows there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Carter v. Ford Motor Co.,* 121 F.3d 1146, 1148 (8th Cir.1997) (citing *Yowell v. Combs,* 89 F.3d 542, 544 (8th Cir.1996)). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is material when it is a fact that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rouse v. Benson,* 193 F.3d 936, 939 (8th Cir. 1999); *Beyerbach v. Sears,* 49 F.3d 1324,

1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394.

In considering a motion for summary judgment, a court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus.,* 475 U.S. at 587, 106 S.Ct. 1348. Further, the court must give such party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* Procedurally, the nonmoving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel* 953 F.2d at 394 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the moving party successfully has carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed.R. Civ. P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

The Eighth Circuit has made it clear that summary judgment should be used sparingly in employment discrimination cases. *Haglof v. Northwest Rehabilitation, Inc.,* 910 F.2d 492, 495 (8th Cir.1990); *Hillebrand v. M–Tron Indus., Inc.,* 827 F.2d 363, 364 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989). The Court therefore considers Defendant's motion with these principles in mind.

## B. Plaintiff's Breach of Contract Claim

Plaintiff alleges in his complaint that Defendant's employment manual and terms of employment constituted an employment contract and that Defendant breached this contract by discharging Plaintiff for reasons contrary to the contract and to public policy. Defendant moves for summary judgment on Plaintiff's breach of contract claim alleging that, because Plaintiff's Union was the exclusive collective bargaining representative for Defendant's employees, Defendant could not negotiate individual employment agreements with bargaining unit employees. As such, any breach of contract claim Plaintiff may have against Defendant based on alleged contractual obligations of Defendant must arise exclusively from the Collective Bargaining Agreement between Plaintiff's Union and Defendant (the "CBA"). Accordingly, Defendant argues that Plaintiff's breach of contract claim therefore is preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Defendant further contends that, to the extent Plaintiff's breach of contract claim requires the interpretation of the CBA and is preempted by Section 301, Plaintiff failed to exhaust the grievance procedures set forth in the CBA and therefore he cannot now maintain a separate breach of contract claim. Finally, Defendant asserts that, even if Plaintiff had brought an action against Defendant under Section 301, such claim would be time barred because he failed to file his action within the six-month statute of limitations of Section 301.

■■■■ Section 301 (a) of the LMRA provides, in pertinent part that " '[s]uits for violation of contracts between an employer and a labor organization ... or between any such labor organizations may be brought in any district court of the United States ...' and completely preempts state law claims founded 'directly on rights created by collective-bargaining agreements, and also claims substan-

tially dependent on analysis of a collective bargaining agreement.'" *Schuver v. MidAmerican Energy Co.*, 154 F.3d 795, 799 (8th Cir.1998)(citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). Thus, "[w]here a state law claim is based on a collective bargaining agreement or is 'inextricably intertwined' with the contents of a collective bargaining agreement, the claim is subject to § 301(a) preemption." *Id.* (citing *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)). However, where a state law claim does not depend upon the interpretation, analysis or construction of a collective bargaining agreement and can be resolved without the need to interpret the collective bargaining agreement, the state law claim is "independent" of the collective bargaining agreement for Section 301 preemption purposes. *Id.* (citing *Barske v. Rockwell Int'l Corp.*, 514 N.W.2d 917 (Iowa 1994)). For example, in *Anderson v. Ford Motor Company*, 803 F.2d 953 (8th Cir.1986), *cert. denied*, 483 U.S. 1011, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987), the Eighth Circuit held that an employee's claims of fraudulent misrepresentation were not completely preempted by Section 301 because the tort of fraudulent misrepresentation "ar[o]se in state common law and [was] measured by standards of conduct and responsibility completely separate from and independent of a collective bargaining agreement."

In response to Defendant's contention that it is entitled to summary judgment on Plaintiff's breach of contract claim because such claim is preempted by Section 301 of the LMRA, Plaintiff offers no evidence that his breach of contract claim arises independently of the CBA. Instead, Plaintiff changes his breach of contract claim to that of a claim for breach of a statutory provision (the Family and Medical Leave Act) which Plaintiff contends applies irrespective of the terms of the CBA. During

the telephonic hearing on Defendant's motion for summary judgment, Plaintiff asserted that the contract which embodied the statutory terms Defendant allegedly breached consists of the various forms Plaintiff received from Defendant in connection with his medical leave.

■ The Court finds that Plaintiff has failed to present any evidence that Plaintiff's breach of contract claim arises independently of the CBA and therefore is not preempted by Section 301 of the LMRA. The Court further finds that even if Plaintiff could prove that his breach of contract claim arises independently of the CBA and therefore is not preempted, Plaintiff has failed to establish a genuine issue of material fact with respect to the issue of whether either the employment manual or the medical leave forms constituted an enforceable contract between Plaintiff and Defendant. Further, even if such documents did constitute an enforceable contract, Plaintiff has not put forth any evidence to show which of those terms Defendant breached. Accordingly, the Court grants summary judgment in favor of Defendant on Plaintiff's breach of contract claim.

## C. Plaintiff's Family and Medical Leave Act Claim

The Family and Medical Leave Act (the "FMLA") provides up to twelve weeks of medical leave to covered employees for serious health conditions and protects such employees' right to be placed in the same or an equivalent position upon return from leave. 29 U.S.C. §§ 2612(a)(1)(D); 2614(a). FMLA regulations provide that an employee must give to his or her employer adequate notice of the need to take leave. 29 C.F.R. § 825.302(a). Where an employee's need for leave is foreseeable, an employee must give the employer notice of the employee's need for leave at

least 30 days in advance. *Id.* If it is not practical for an employee to give the employer 30 days notice, for example, because the employee does not know exactly when his or her leave will begin, because of a change in circumstances or because of a medical emergency, the employee is required to give the employer notice of the need for leave as soon as practicable. *Id.* An employee need only give to his or her employer notice of the need for FMLA leave one time, but the "employee shall advise the employer as soon as practicable if the dates of the scheduled leave change or are extended, or were initially unknown." *Id.; see also* 29 C.F.R. § 825.309(c) (providing that an employer may require that an employee provide an employer with reasonable notice (i.e. within 2 business days) of a change in the need for leave where such changed circumstances are foreseeable). Generally, the term "as soon as practicable" means no more than two days after learning of the need for leave or the need for extension of the leave, as the case may be. 29 C.F.R. § 825.302(b).

Employers are entitled to require that employees submit medical certification of the need for medical leave. *See* 29 U.S.C. § 2613. Further, employers may require that employees submit recertification when an employee requests an extension of leave, provided that such recertification is not required prior to 30 days after the employer's previous receipt of medical certification. 29 C.F.R. § 825.308(c)(1).

In this case, Plaintiff contends that Defendant violated the FMLA by terminating Plaintiff's employment for what Plaintiff characterizes as his alleged failure to follow Defendant's policies regarding employee leave. Defendant moves for summary judgment on this claim, asserting that Defendant's decision to terminate Plaintiff's employment did not violate the FMLA. Defendant contends that the FMLA and the regulations promulgated thereunder impose upon the employee a duty to notify his or her employer of the need to extend FMLA leave beyond the period of leave initially granted and to provide medical recertification in support of the need for such extension when requested. Defendant maintains that its decision to terminate Plaintiff was based on Plaintiff's failure to provide to Defendant (1) notice that Plaintiff needed to extend his FMLA leave beyond the initial leave period which ended on November 23, 2000 and (2) recertification of Plaintiff's serious medical condition. Defendant claims that its termination of Plaintiff's employment therefore was justified by Plaintiff's failure to provide such notice and did not violate the FMLA.

Plaintiff argues that a factual issue exists as to whether Defendant ever asserted that it would automatically terminate Plaintiff if he failed to provide to Defendant notice of his need for an extension of leave and the supporting medical certification. Plaintiff cites the following language in the Application in support of this contention:

**FAILURE TO RETURN ON THE FIRST DAY FOLLOWING THE EXPIRATION DATE,** or to provide the necessary doctor's certificate for the extension of leave (where allowable) on or before the expiration date, **WILL RESULT IN *AUTOMATIC SEPARATION* FROM THE PAYROLL....**

It is Plaintiff's position that, because Defendant used the term "automatic termination" in other parts of the Application, Defendant's use of the term "automatic separation from payroll" in reference to an employee's failure to provide the necessary medical certification to extend his or her leave precludes the Defendant from automatically terminating an employee for failure to provide such certification.

Plaintiff further contends that a genuine issue of material fact exists as to whether Defendant had notice of Plaintiff's need to extend his leave beyond the initial leave period as set forth in the Application. In support of this contention, Plaintiff cites a list of documents which either were addressed to an employee of Defendant or were carbon copied to an employee of Defendant which should have put Defendant on notice of Plaintiff's expected return to work date, which was December 4, 2000. Plaintiff further contends that Defendant had Plaintiff's home telephone number and therefore should have called Plaintiff to inquire as to his medical condition prior to terminating Plaintiff.

■ After reviewing all of the evidence submitted by Plaintiff in resistance to Defendant's motion for summary judgment on Plaintiff's FMLA claim, the Court finds that Plaintiff has failed to satisfy his burden of submitting evidence from which this Court could find that there is a genuine issue for trial. The FMLA and the regulations promulgated thereunder make it clear that (1) an employer may request recertification of a serious medical condition when an employee seeks to extend his medical leave, *see* 29 C.F.R. § 825.308(c)(1); and (2) an employee must give his or her employer notice as soon as practicable if the dates of a scheduled leave change or are extended. 29 C.F.R. §§ 825.302(a); 825.309(c). *See Carter v. Ford Motor Co.*, 121 F.3d at 1148 (upholding grant of summary judgment where notice to employer of need for FMLA leave was neither adequate or timely); *Satterfield v. Wal–Mart Stores, Inc.*, 135 F.3d 973, 980 (5th Cir.1998) (reversing district court's denial of summary judgment on plaintiff's FMLA claim after concluding as a matter of law that plaintiff's notice to employer of the need for FMLA leave was inadequate). Moreover, the law does not impose upon an employer an affirmative obligation to investigate the circumstances of an employee's medical condition in all situations. Rather, under 29 C.F.R. § 825.303(b), employers are expected to make an "informal" inquiry only when an employee or the employee's spokesperson requests leave under circumstances where the need for leave was not foreseeable (i.e., in a medical emergency or in other urgent circumstances).

In this case, the record is clear. Defendant's company policy required that Plaintiff return to work upon termination of the leave period set forth in the Application or provide to Defendant medical certification of the need to extend his leave on or before the expiration of Plaintiff's initial leave period. Plaintiff testified in his deposition that he understood Defendant's policy and, further, that he understood that if he failed to either provide a doctor's certificate to extend his leave or to return to work on the first workday after his leave expired, he would be terminated. There is no evidence in the record that Plaintiff actually was confused as to the meaning of the phrase "automatic separation from payroll" used in the Application.

On November 7, 2000, Plaintiff received from his treating physician a medical certification which indicated a return to work date of December 4, 2000. Thus, Plaintiff knew on November 7, 2000 that he would need to extend his FMLA leave beyond the expiration of the initial leave period. Plaintiff offers evidence that his wife checked with Nurse Colston at his treating physician's office on two occasions to ensure that she had faxed to Defendant the certification indicating a return to work date that was beyond the expiration of the initial leave period. Plaintiff also offers evidence that Defendant destroyed its records of receipt of faxes for the time period in question and that Defendant received copies of certain documents which Plaintiff contends should have put Defendant on

notice that Plaintiff needed to extend his leave period. Plaintiff offers no evidence, however, that Plaintiff, his wife or any other spokesperson for Plaintiff ever contacted Defendant to confirm that Defendant had received the requisite recertification or notice of the need for an extension of Plaintiff's medical leave. Further, Plaintiff puts forth no evidence that Defendant actually received such documentation. Moreover, while Plaintiff argues that Defendant should have inquired of Plaintiff as to the status of his medical condition and need for extended medical leave, the Court finds that Defendant was not required to make such an inquiry in this case. Plaintiff's need for extended leave was neither the result of a medical emergency nor was it unforeseeable. Plaintiff knew on November 7, 2000 that he needed to extend his FMLA leave and failed to ensure that Defendant received proper notice of his need for extended leave. The Court therefore grants Defendant's motion for summary judgment with respect to Plaintiff's FMLA claim.

IT IS THEREFORE ORDERED that Defendant's motion for summary judgment (docket no. 11) on Count II (breach of contract claim) and Count III (Family and Medical Leave Act claim) of Plaintiff's complaint is GRANTED. All court costs are assessed against Plaintiff.

IT IS FURTHER ORDERED that Plaintiff's motion to take the evidentiary deposition of Marlene Lantz for trial (docket no. 27) and the motion in limine (docket no. 31) are denied as moot.

IT IS FURTHER ORDERED that the trial set for January 20, 2003 and the pretrial conference set for January 10, 2003 are canceled because this ruling eliminates the need for trial.